DAVID SPERLING and Others, Plaintiffs, *v.* LEWIS J. VALENTINE and Others, Defendants.

Supreme Court, Special Term, New York County, February 20, 1941.

*S. Robert Zimmerman,* for the plaintiffs.

*William C. Chanler, Corporation Counsel,* for the defendants.

STEUER, J. Both sides move for judgment on the pleadings. The question involved is the constitutionality of Local Law No. 166 of the New York City Local Laws of 1939. If constitutional the defendants should prevail, if not the decision should be for the plaintiffs. The statute, which is sections B36–96.0 to B36–102.0, inclusive, of the Administrative Code of the City of New York, provides for the licensing of itinerant jobbers of foodstuffs. A

jobber is defined as one who sells to retailers, restaurants and like institutions which sell food to the public. An itinerant jobber is defined as one who conducts that business by riding or traveling upon or along the city streets in a vehicle of any kind. An annual license is provided for based upon the size and number of vehicles used, ranging from $100 for each vehicle of one ton or less up to $250 for each vehicle of more than two tons. Exempted from the provisions of the article are (1) wholesale merchants or dealers maintaining a store or warehouse within the city for the handling of foodstuffs; (2) farmers in regard to produce raised on their own farms within the city, and (3) persons selling directly to consumers.

A temporary injunction has been granted upon the ground that a sufficient showing had been made to question the constitutionality of the statute on three grounds, namely, (1) that the statute is in fact a license of vehicles; (2), that it discriminates unreasonably in favor of certain persons; and (3) that the license fee is unreasonable in amount. Since this decision the parties have agreed upon many facts and seem to be in accord that the facts thus established present the issues with such clarity that further proof is superfluous.

The questions presented will be taken in order. The exclusive power to regulate the licensing of motor vehicles and to regulate their use of the public highways rests with the State (Vehicle and Traffic Law, § 10), and the city cannot legislate on this subject. (Vehicle and Traffic Law, § 54.) The specific question is whether this prohibition precludes a license being imposed upon an occupation where the essence of the occupation is the use of the vehicle and the measure of the license fee depends on the vehicle used. No categoric answer is to be found in the authorities. While it is quite clear that a municipality may not impose a license on vehicles generally (*City of Buffalo* v. *Lewis*, 192 N. Y. 193), and may not close streets to vehicles of a certain description (*People* v. *Bedell*, 251 N. Y. 415), yet it is undetermined except by inference as to whether a license may be required for engaging in an occupation which consists of putting a vehicle to a certain use on the city streets. The Administrative Code of the City of New York contains a statute which seems to present the same situation as the act under discussion, if anything in sharper outline. The hack license ordinance, section 436.2.0 of the Administrative Code of the City of New York provides for the licensing by the city of taxicabs and a fee is charged for each cab operated. While there has not been discovered any challenge to this law on the ground that it conflicts with the Vehicle and Traffic Law, the statute and its predecessors have often been the subject of interpretation by the Court of Appeals. (*Matter of Pruzan* v. *Valentine*, 282 N. Y. 498;

*Matter of Rudach* v. *Valentine,* 274 id. 615.) One is led to the conclusion that where a *bona fide* regulation of an occupation is concerned a license may be required even though the nature of the occupation implies the use of the streets by a motor vehicle. Once this conclusion is reached the manner of fixing the fee can be seen to be a yardstick of measure and not assailable.

Local Law No. 166 is alleged to contravene section 80 of the General Municipal Law and to be discriminatory generally. Section 80 is not violated. It refers to restrictions imposed by municipalities on inhabitants of other municipalities from which restrictions their own inhabitants are exempted. Local Law No. 166 makes no distinction based on residence. Under it a non-resident with a warehouse in the city would be exempt while a resident with no place of business for the handling of foodstuffs is subject to the license. Whether the statute is otherwise discriminatory depends on whether or not the exemptions provided constitute reasonable distinction. (*State Board of Tax Commissioners* v. *Jackson,* 283 U. S. 527.) The resolution of this question depends on the objects to be accomplished by Local Law No. 166, and here the facts conceded by the parties are significant. It is established that all the products dealt in by itinerant jobbers are subject to inspection and regulation by the health authorities and that such inspections are continuously conducted. The city claims the purpose of the statute is to facilitate these inspections and make possible the enforcement of regulations and orders in regard to the foodstuffs handled. Where the circumstances provide such facility, as where the dealer has a fixed place of business where the foodstuffs can be examined and the regulations enforced, no further regulatory steps are needed. As to the other exemptions in favor of those engaged in food peddling to consumers, these persons are already licensed. There is ample authority recognizing the difference between the regulation of fixed and itinerant vendors and the reasonableness of requiring a license from the latter only. (See *Jewel Tea Co.* v. *City of Troy,* 80 F. [2d] 366, and cases cited.) The plaintiffs urge that Local Law No. 166 was enacted at the behest of wholesale food dealers in an effort to drive jobbers from the field. No such motive can be imputed to the city council unless the proof of it can be found in the effect necessarily to be accomplished by the statute.

This naturally leads to a discussion of the fee charged and whether this is excessive. It is conceded that this act is not a revenue measure. As a regulatory measure the license fee is restricted to an amount which will compensate for issuing and recording the license and pay for inspection to see to the enforcing

of the license provisions. (*People* v. *Jarvis*, 19 App. Div. 466; 3 McQuillin Municipal Corporations [2d ed.], § 1102.)

The city seeks to justify the fee charged by the cost of inspection. But here it falls into error. The cost of inspection to see whether a licensee has violated a penal law or is engaged in practices violating regulations for the handling of foodstuffs may be very large. Neither that cost nor the practices which might give rise to it is the subject of this statute. The cost might possibly be a proper gauge for a tax on the business, an object specifically disclaimed in the admitted facts. While prevention of threatened violations of substantive law is the ultimate object of all licensing, the cost of enforcement of the general regulations cannot be made the measure of the fee charged. These costs exist independently of this local law whose immediate object is identification of persons in the trade to the end that they be made more amenable to the enforcement of existing laws There is no showing that the cost of inspection in regard to licenses would justify a fee of the size charged.

The plaintiffs' motion is granted.