In the Matter of Richard W. Stewart et al., Copartners Doing Business as Stewart's 4-Cities Trailer Park, Petitioners, against Robert L. Carrington, as Assessor of the Town of Vestal, et al., Respondents.

Supreme Court, Special Term, Broome County, February 27, 1953.

*Charles R. Stewart* for petitioners.

*John D. Smith* for respondents.

Anderson, J. This is a proceeding brought under article 13 of the Tax Law to review an assessment made July 1, 1952, on real property of the petitioners in the town of Vestal, Broome County, New York, pursuant to section 9 of the Tax Law.

The assessment made on petitioners' property by the town assessors as of July 1, 1952, was as follows: $5,000, land; $2,000, utility building; $2,000, garage and office; $13,400, 28 trailers.

Although the petitioners point out that the increase over the 1951 assessment on land is 400% and an increase on the two buildings is 100%, they waive formal objection. The only item to which objection is made is the assessment placed on the trailers. The issue to be decided in this proceeding is whether or not the twenty-eight trailers are real property.

Section 3 of the Tax Law, entitled *"Property liable to taxation,"* provides: "All real property within this state is taxable unless exempt from taxation by law. Notwithstanding any provision of this chapter, or of any other general, special or local law to the contrary, personal property, whether tangible or intangible, shall not be liable to taxation locally for state or local purposes."

Subdivision 6 of section 2 of the Tax Law provides: "The terms ' land ', ' real estate ' and ' real property ' as used in this chapter, include the land itself above and under water, all buildings and other articles and structures, substructures and superstructures, erected upon, under or above or affixed to the same."

With the foregoing statutory background, the assessors of the Town of Vestal proceeded to tax the trailers as real property. The petitioners obtained title to twenty-one and fourteen hundredths acres of land and in 1949 cleared about ten acres thereof for the development of a modern trailer park. Roads were built, water and sewer system installed, electric and telephone connections provided for individual use. Connections were installed on thirty-seven lots to provide service of utilities to such lots. The lots were thirty feet by forty-five feet and rented to individual trailer owners with the use of the utilities on a week-to-week or month-to-month basis. None of the trailers were owned by the petitioners. All of the trailers at the time of assessment were on their own wheels, none were on permanent foundations. The utility building on the premises provided shower, wash basins and toilet facilities, with adequate supply of hot and cold water; electric washers and dryers were also installed for use of the occupants of the trailers.

The utility and service connections to the individual trailers were temporarily attached thereto.

The definition of " trailer " as set forth in subdivision 27 of section 2 of the Vehicle and Traffic Law is as follows: " 'Trailer '

shall include any vehicle not propelled by its own power drawn on the public highways by a motor vehicle or motor cycle operated thereon, except motor cycle side cars, vehicles being towed by a non-rigid support and vehicles designed and primarily used for other purposes and only occasionally drawn by a motor vehicle or motor cycle.''

Subdivision 28: '' 'Semitrailer' shall include any trailer which is so designed that when operated the forward end of its body or chassis rests upon the body or chassis of the towing vehicle.''

Subdivision 28-a: '' 'House coach' means any vehicle motivated by a power connected therewith or propelled by a power within itself, which is or can be used as a home or living abode or habitation of one or more persons, either temporarily or permanently. In the application of the provisions of this chapter to house coaches, a house coach propelled by a power within itself shall be deemed a ' motor vehicle,' a house coach motivated by a power connected therewith shall be deemed a ' trailer,' and all house coaches shall be deemed ' vehicles '.''

The terms '' trailer '' and '' house coach '' are used interchangeably. By common speech of people, this type of vehicle is usually referred to as a '' trailer ''. In any event whichever name is adopted, it is a vehicle and the owner is required to register such vehicle and pay a fee therefor. (Vehicle and Traffic Law, § 11.) '' The assessors in each tax district shall annually between January first and July first, ascertain by diligent inquiry all the real property and the names of the owners thereof taxable therein.'' (Tax Law, § 20.)

The validity of the assessment complained of by the petitioner stands or falls on the determination whether or not the '' trailers '' are real or personal property.

'' House coaches '' and '' trailers '' are primarily designed, manufactured, bought and sold as mobile units. Trailer parks or areas have sprung up all over the country to provide accommodation to this form of transportation. No one can seriously contend that as soon as these vehicles are halted for a given period of time they change character and become real property. It is true that a trailer can be divested of its wheels and motor power, and mounted upon a foundation of a permanent construction and thereby cease to be a mobile unit. In such case it can very properly fall within the definition of real property. (*People ex rel. Herzog* v. *Miller,* 170 **Misc.** 1063, affd. 258 App. Div. 724.)

It is mandated by statute that real property shall be assessed according to its condition and ownership as of July first in the tax district in which it is situated. (Tax Law, § 9, as amd. by L. 1951, ch. 232.) This statutory provision connotes a certain degree of permanency of the property subject to taxation.

Means of avoiding being assessed on the mandated date are many and varied. To add to the confusion and complexities confronting the assessor is the necessity of placing a valuation on each trailer or house coach that happened to be present in the trailer park on the day designated.

The taxing statutes have been amended from time to time to include telegraph lines, wires, poles and appurtenances, also pipes, tanks, conduits and other articles which without statutory definition might well lead to disputed interpretation. It is therefore very necessary that property to be taxed should be clearly defined. It is futile to read into a statute something that is not there. To apply a strained construction to a statute is not in the public interest nor does it lead to the orderly administration of government. Citizens are entitled to a clear and unequivocal definition of terms of a law which they are compelled to observe. This is a legislative function. The judicial branch of government is designed to apply the law and not make it.

While not germane to the issues in this case, it is proper to observe that greatly expanding use of the trailer or house coach poses problems for localities in the form of providing police and fire protection, sanitation supervision, educational facilities for seasonal sojourners and countless other services which impose severe financial burdens on the localities involved. Legislation is the proper recourse to pursue.

The court finds that the " trailers " designated on the assessment roll as real property do not fall within the statutory definition of real property; that the assessment as such is erroneous and illegal and that the petitioners have judgment accordingly.