Henry A. Hudson, J.
This action was instituted by Leona M. Barnes, a resident of the town of Elbridge, Onondaga County, New York, who conducts therein a trailer camp or park.
The action was instituted to have a town ordinance enacted in February, 1954 imposing a fee of $3.50 per month per trailer upon house trailers in a trailer park pursuant to section 130 (subd. 21) and section 136 (subd. 11) of the Town Law declared unconstitutional in that it provides for double taxation and as not being duly enacted.
*287 It was also instituted against the assessors and other officers of the Town of Elbridge by Mrs. Barnes in her own behalf and on behalf of all others similarly situated for the purpose of having the assessment for the year 1954 upon premises owned by her in the sum of $12,500 declared invalid and void in that it was increased from $2,000, the assessment for the previous year, pursuant to the provisions of chapter 726 of the Laws of 1954, being subdivision 6-a (pars, a, b) of section 2 of the Tax Law of the State of New York. This chapter and section provided for the assessment of house trailers situated upon premises for 60 days, as real estate assessable to the owner of the land upon which they are located. The plaintiff contends that such statute is unconstitutional.
The action was tried at an Equity Term of Supreme Court in Onondaga County. Upon the trial the following facts were established to my satisfaction and I so find:
The plaintiff, Leona M. Barnes, in 1954 was the owner of premises located upon Route 5, in the town of Elbridge, Onondaga County, N. Y. consisting of approximately four acres and described in paragraph “ 1.” of the plaintiff’s complaint.
That the plaintiff conducted a trailer park and restaurant upon said premises in 1954 and has so conducted such premises since the late Fall of 1947.
That the premises were assessed in 1953 at $2,000, no assessment being placed on the trailers located on the premises.
That some time in April or May, 1954, the assessors of the Town of Elbridge viewed the premises with the plaintiff and pursuant to the provisions of section 2 (subd. 6-a, pars, a, b) placed an assessment upon nine trailers maintained upon the premises as follows:
A 1951 — 35-foot Peerless trailer owned by the plaintiff and rented by her, assessed for $1,200.
A 1948 — 33-foot Liberty trailer owned by Lee Morgan, assessed for $1,100.
A 1951 — 26-foot Elcar trailer, owned by George Hunter, assessed for $1,100.
A 1953 — • 41-foot Wheatley trialer, owned by Irving Stanhofer, assessed for $1,500.
A 1953 — 35-foot Zimmer trailer, owned by Robert Tetrault, assessed for $1,200.
A 1947 • — • 35-foot Prairie Schooner trailer, owned by Theodore Tibbals, assessed at $1,000.
A 1953 — 35-foot Richardson trailer owned by Richard Stoher, assessed at $1,200.
*288 A1948 —- 23 Wildwood trailer owned by Allen Teepen, assessed at $1,000.
A 1954 — 48-foot Zimmer trailer owned by Jack and Edna Dowdy, assessed at $1,500.
That with the exception of one trailer, these trailers on the premises at the time of the assessment were owned by others than the plaintiff.
That the plaintiff furnished the owners of trailers using her trailer park, including the eight trailers assessed in 1954 with sewer connections, electric power and water.
That many of the eight trailers above described were not on the premises on April 1, 1954 and had not been on the premises 60 days at the time they were assessed or as of June 1,1954.
That the Town of Elbridge duly enacted an ordinance in February, 1954, pursuant to section 130 (subd. 21) and section 136 (subd. 11) of the Town Law regulating trailer parks in such town and providing for license fees therefor of $3.50 per trailer per month.
That the Town of Elbridge had a trailer camp enforcement officer, Clarence Albertson, at an annual salary of $600 whose duty it is to inspect all trailer camps or parks.
That the Town of Elbridge had a zoning or building inspector whose duty, among others, included the inspection of all trailer parks to ascertain if they were violating the zoning ordinance of the town. This officer’s name was Wilfred Schutt and he received compensation of $300 a year for such services as related to trailer parks.
That trailers, including the eight assessed in 1954, were in most instances moved from plaintiff’s premises during the summer of 1954 and replaced by different trailers owned by others.
The evidence as to the cost incurred by the town in inspecting and regulating trailer parks in the town of Elbridge clearly establishes that the licensing fee of $3.50 a month per trailer is fair and reasonable.
In respect to plaintiff’s contention that the town ordinance adopted in February, 1954 was not duly, properly and legally adopted, there was no evidence submitted by the plaintiff to establish such contentions and I am satisfied that the plaintiff has failed to sustain the burden of proof. On the contrary, it would appear that the ordinance was duly adopted and I so find.
I will first consider the question of the validity of the enactment of the ordinance and its constitutionality. No authorities have been submitted showing that the ordinance was uncon *289 stitutional as asserted by the plaintiff and I am of the opinion that on the contrary it is constitutional, valid and enforcible.
I am also of the opinion that such ordinance does not provide for a tax upon the real property of the plaintiff but rather is a regulatory and licensing provision under the Town Law and enforcible as such.
The Town of Elbridge provided supervisory town officers whose titles were “ trailer camp enforcement officer ” and “zoning and building inspector” whose duties included the inspection and supervision and the proper maintenance and operation of all trailer camps or parks in the town of Elbridge. (People v. Stewart, 204 Misc. 490.)
I also find that this ordinance was justified and a proper exercise of the police power invested in the town under sections 130 and 136 of the Town Law in the interests of the public and as such is valid and enforcible. (Matter of Concordia Collegiate Inst. v. Miller, 301 N. Y. 189, 196.)
The license fee provided under such statute was no more than sufficient to compensate for the expense of issuing and recording a license, of providing police control over and covering the cost of inspecting and regulating that particular type of business. (Price v. Horton, 170 Misc. 899; Dugan Bros. of New Jersey v. Dunnery, 150 Misc. 645, affd. 242 App. Div. 779.) A license fee sufficient to cover the cost of enforcement, inspection and licensing does not constitute the imposition of a tax on the business. (Dugan Bros. of New Jersey v. Dunnery, supra.)
I will next consider the question of the constitutionality of subdivision 6-a (pars, a, b) of section 2 of the Tax Law, which declares that trailers which are or can be used as a house or living abode or habitation or for business, commercial or office purposes, either temporarily or permanently except (1) those which have been located within the boundaries of a tax district for less than 60 days, and (2) those which are for sale and which are not occupied are specified to be land, real estate and real property for the purposes of the Tax Law and shall be assessed to the owners of real property on which they are located.
It is urged by the plaintiff that this section violates articles I, VI and VIII of the New York State Constitution and the Fourteenth Amendment of the Federal Constitution; that to assess trailers as real property amounts to taking property without due process of law and is confiscatory, discriminatory and does not constitute the proper exercise of the legislative authority. The plaintiff further urges such unconstitutionality on the ground that the language of the section is indefinite, *290 ambiguous and invalid in that it does not provide any recognized rule pertaining to the valuation of real property and is incapable of being fairly administered.
Subdivision 6-a (pars, a, b) of section 2 of the Tax Law, which was added by chapter 726 of the Laws of 1954, effective April 15,1954, reads as follows:
“ 6-a. a. In addition to their meaning as provided in subdivisions six, the terms ‘ land,’ ‘ real estate,’ and ‘ real property,’ as used in this chapter, include all the forms of housing which are adaptable to motivation by a power connected thereto or which may be propelled by a power within themselves and which are or can be used as a house or living abode or habitation of one or more persons, or for business, commercial or office purposes, either temporarily or permanently, and commonly called and hereafter referred to as ‘ trailers ’; except (1) transient trailers which have been located within the boundaries of a tax district for less than sixty days and (2) trailers which are for sale and which are not occupied.
“ b. Trailers shall be assessed to the owners of the real property on which they are located. ’ ’
Prior to its enactment and for some years last past, the Legislature and the courts have recognized the many problems raised by the constantly increasing trailer population and the growing number of trailer parks which provide easily available facilities on specified and designated parcels of land for electricity, water, sewage, garbage disposal and other necessary and appropriate adjuncts to normal living quarters for the benefit of the ever increasing segment of our population making their homes in mobile units commonly known and described as trailers and who move from place to place in the course of their everyday life staying some times for several months and sometimes for several years. The people who so make their homes in trailers actually use them as their permanent residences wherever they are located at the time and require the same police and fire protection, the same school facilities, the same sanitary and health services and the same public benefits as those of the population who reside in permanent homes or houses.
Many of those who occupy trailers purchase land and permanently establish their trailers upon a foundation and equip the land and its surroundings with the same facilities for normal living as the owners of a standard home. Occasionally owners or operators of trailer parks and similar establishments will locate a trailer which they own upon a permanent foundation find will rent or lease the same as an ordinary house is rented. *291 This type of use, namely, the location of a trailer upon a permanent foundation or the rental of a trailer by the owner of the real estate presents little problem to the tax authorities.
The trailer mounted on wheels using the trailer park facilities to obtain the advantages of a complete home unit presents a very different problem and is the one which the Legislature seeks to cover by subdivision 6-a (pars, a, b) of section 2 of the Tax Law. It is only right that the occupants of these trailers should pay their fair share of real estate taxes. Prior to the enactment of subdivision 6-a (pars, a, b) of section 2 of the Tax Law, trailers as therein defined were sought to be brought within the meaning of subdivision 6, which provides that wharves, piers and docks above and under water, bridges, telegraph lines, wires and appurtenances and other public utility structures, equipment and facilities shall be deemed to be land, real estate and real property. That trailers, such as we are considering here do not fall within the statutory definition of real property as contained in subdivision 6 of section 2 of the Tax Law, was determined in Matter of Stewart v. Carrington (203 Misc. 543) and in Erwin v. Farrington (285 App. Div. 1212). In the latter case the Appellate Division, Fourth Department stated: “ Prior to the enactment of section 2 (subd. 6-a, par. a) of the Tax Law, such trailers were not real property subject to taxation, and the assessments are illegal and void.”
As a result of these and similar decisions, the Legislature in 1954 enacted subdivision 6-a (pars, a, b) of section 2.
The question of the constitutionality of this law has already been considered by the courts in three instances that have been called to my attention. The Special Term of the Supreme Court has held the statute valid and the assessment legal. (Matter of Feld v. Hanna, 4 Misc 2d 3; Matter of Beagell v. Douglas, 2 Misc 2d 361.)
The Special Term held the statute invalid as violating section 6 of article I of the New York State Constitution and the Fourteenth Amendment of the Constitution of the United States. (New York State Trailer Coach Assn. v. Steckel, 208 Misc. 308, revd. on other grounds 3 AD 2d 643.)
So far no authority has been called to my attention where the constitutionality of this section has been passed upon by an appellate court.
The two which have held the statute constitutional and valid have relied upon those authorities which hold that the Legislature has the power to designate anything which it chooses, for any specific purpose, as real estate even though for ordinary *292 purposes it would be considered personal property and that the courts have no authority to interfere with such legislative determination.
The case which holds the statute unconstitutional, holds that the Legislature cannot, by calling a trailer something which it is not, impose a tax upon people who do not own those trailers, as in so doing, a serious question of due process and a denial of equal protection of the laws which is granted by both the Federal and State Constitutions is raised. In this case, the court points out and I am inclined to agree that there has to be some limitation upon the right of the Legislature to declare for the purposes of taxation, that personal property is real property particularly when it has none of the qualities or qualifications of real estate. He followed Hoeper v. Tax Comm. (284 U. S. 206) in which the holding seems to be particularly applicable here. In the Hoeper case, the court held that the claim of necessity to prevent frauds and evasions of taxes could not justify an otherwise unconstitutional enactment and quoted from its earlier decision in Schlesinger v. Wisconsin (270 U. S. 230) as follows (p. 217): “ ‘ That is to say, “A” may be required to submit to an exactment forbidden by the Constitution if this seems necessary in order to enable the State readily to collect lawful charges against “ B.” Rights guaranteed by the federal Constitution are not to be so lightly treated; they are superior to this supposed necessity. The State is forbidden to deny due process of law or the equal protection of the laws for any purpose whatsoever. ’ ’ ’
Section 2 of the Tax Law relates to “ Definitions ”. Paragraphs a and b of subdivision 6-a contain a definition of trailers as land, real estate and real property. It specifically provides as does subdivision 6 that such definition applies wherever the term land, real estate and real property are used in chapter 60 of the Consolidated Laws. It, therefore, must be applied to section 8 Avhich relates to the assessment of real estate and reads: “ All real property subject to taxation shall be assessed at the full value thereof ” and to section 9, which relates to the time and place of the assessment of the property and provides that such property shall be subject to sale for the tax as levied. It reads: “ Real property shall be assessed according to its condition and ownership as of June first in the tax district in which it is situated. In all cases the assessment shall be deemed as against the real property itself, and the property itself shall be holden and liable to sale for any tax levied upon it. ’ ’
It must be clear, therefore, that those trailers to which subdivision 6-a of section 2 refers, not only are to be considered *293 land, real estate and real property for the purpose of assessment but also are assessable themselves as real estate and are subject to sale as real estate to enforce the collection of the tax.
If its application were limited solely to the manner in which the trailer park owner’s land should be valued for tax purposes under section 8, a different problem might be presented. In that event all trailer park owners would receive equal treatment under the law. Carrying on a commercial enterprise and inviting the use of their land for living quarters by outsiders to whom they provide permanent installations for all public and private services for normal living, such trailer park operators should be made responsible for the proportionate cost of government which should be borne by the trailer residents upon such land. The burden of responsibility could be placed on the proper person, the trailer park owner, to collect and pay the additional tax imposed upon the land used for the commercial purpose involved. This would appear to be the purpose of the enactment of subdivision 6-a of section 2. However, the application of the definition added by subdivision 6-a of section 2 to section 9 of the Tax Law and thus to the trailers themselves as being covered by assessment and subject to sale to collect any tax thereon creates an entirely different series of obligations. These are extended and made the easy subject of fraudulent and evasive tactics to avoid liability for taxation through the 60-day exception provision. As a result all manner of situations and circumstances can be created which will result in the denial of due process of the law and the equal protection of the laws as guaranteed by the Fourteenth Amendment of the United States Constitution and section 6 of article I of the State Constitution. This would be true not only of the trailer owner but also of the trailer park owner. In addition to this many practical problems would be presented, to the assessors, to the owner of the trailer park, to the owner of the trailer, to the tax collector, the County Treasurer and to any purchaser at a tax sale which would require interpretation of statutory provisions which would be ambiguous, indefinite and incapable of being fairly interpreted or administered.
An examination of some of the practical problems to which I have just referred will be illustrative.
I will first consider the exception provided under paragraph a of subdivision 6-a (Tax Law, § 2) as to those trailers which have not been within the tax district 60 days. Obviously the 60-day period must date from June 1 in order to come within the requirement of section 9. If it were assessed before June 1, it could be driven off the trailer park any time up to May 31 and not be *294 there on June 1, therefore, under the statute it would not be subject to assessment. The assessment could not be made prior to June 1 unless the assessors were to check back on June 1 or some date thereafter to be sure that the trailer in question was still there. This would, in many instances, be a physical or at least a practical impossibility. The proof in the present case indicates that the assessors went upon the property and in company with the owner and operator of the trailer park examined the trailers thereon. This was done some time during April or May of 1954. The assessor testified that he could not tell within a period of 70 or 80 days when it was. The proof is clear and uncontradicted that many of the trailers which were assessed against the property, which is the subject of this proceeding, did not come upon the property until some time during the month of April. Those trailers would not have been on the premises 60 days on June 1, 1954 and could not properly be the subject of assessment. There were nine trailers upon the premises, eight of which were owned by persons other than the owner of the trailer camp. A specific valuation was placed upon each of the trailers which varied according to the size and age of the particular trailer. The assessment was made against the owner of the land.
While the purpose of this action is not directed to having the assessment declared illegal because the trailers were not on the premises 60 days on June 1, 1954, the fact itself is illustrative that the statute is incapable of being fairly administered and is ambiguous, indefinite and does not provide any recognized rule pertaining to the valuation of real estate. This is also borne out by the fact that the valuation of each trailer was made on the basis of its age, cost and value as a used trailer and not as connected with or a part of the real estate itself.
I will next consider one specific instance pointed out by the court in New York Trailer Coach Assn. v. Steckel (208 Misc. 308, revd. on other grounds 3 A D 2d 643, supra).
If the owner of a trailer which had been parked for 58 days in one trailer park moved the trailer to another trailer park in the same tax district on May 30, it would be subject to taxation as a part of the real estate of the second trailer park owner although it had only been there two days whereas the owner of the first trailer park upon whose land it had been kept for at least 58 days would pay no portion of the tax. As the court pointed out there would be innumerable additional situations as incongruous as this and depending upon the nature of the circumstances someone would be deprived of the equal protection of the law or would be deprived of property without due process of law *295 whether he be the owner of the trailer, the owner of the trailer park or the owner of some other trailer park in the same tax district. If instead of being moved within the same tax district, it was moved into an adjoining one, it of course would not be there 60 days and would come within the statutory exception.
I will next consider one other. Assuming one of the trailers in this particular proceeding had been on the property for 60 days prior to June 1, so that it was properly assessable under subdivision 6-a (pars, a, b) of section 2 of the Tax Law. On June 15,1954, it was removed by the owner from the tax district. During the remainder of the tax year three other trailers were moved in and located on the space just vacated, each occupied by different owners. Each remained for two months and then was removed. In March, 1955 another trailer was moved onto the space in question and the owner remained there over a year. In the meantime the owner of the trailer park had not paid the taxes based upon the 1954 assessment. The new trailer which was moved in and located in March, 1955 was assessed upon the 1955 tax roll and its owner paid his share of the tax. Upon the sale of the property for taxes could it be argued that the last trailer properly assessed for 1955 on which the owner had paid the 1955 tax, would not be included in the property sold for the 1954 tax; or that the purchaser at the tax sale could not treat it as real estate when the Legislature had so defined it; or that the trailer owner or the holder of a mortgage or contract lien on the trailer could not remove it from the tax district before the tax sale was held. There would obviously be many other courses of action open during the period from June 1, 1954 to the time of the tax sale probably some two years later, to trailer owners or trailer park owners to avoid tax liability, any one of which would result in one of several trailer owners, the owner of the trailer park or the owner of some other trailer park being deprived of the equal protection of the law or of their property without due process of law.
If such be the effect of subdivision 6-a of section 2 of the Tax Law, a trailer owner could not patronize a trailer camp or park without having first checked the appropriate tax collector’s records to ascertain if Ms trailer was subject to sale for unpaid taxes while he remained.
The defendant urges that the numerous cases which deal with gasoline service stations, buildings, tanks and equipment which are placed upon leased premises by the tenant under provisions in the lease providing for the retention of the title and the right of removal are applicable and comparable with the results sought to be obtained by the Legislature in enacting subdivision *296 6-a of section 2. They have cited among others the following case, Interstate Lien Corp. v. Schmidt (180 Misc. 910). This case involved the installation of a service station building and equipment by a lessee and a tax thereof under subdivision 6 of section 2. (Haas v. Board of Assessors of Town of Clayton, Jefferson Co., 109 N. Y. S. 2d 527.) This case involved the construction of a cottage upon leased land under an oral lease which contained no provision for removal of the building.
People ex rel. Homes Elec. Protective Co. v. Chambers (1 Misc 2d 990) involved the assessment of telegraph or telephone lines, wires and appurtenances used in connection with a burglary protection alarm system, under subdivision 6 of section 2 of the Tax Law. These and similar cases come clearly within the provisions of subdivision 6 of section 2 of the Tax Law and appear to me to be distinguishable from the case here under consideration. They relate to property which is affixed to real estate in such a manner as to be a part thereof with recognizable characteristics of a fixed and permanent nature. They are an adjunct to property which actually is owned by the person who is assessed as the owner thereof or who is actually in the physical possession of the premises and the affixed personal property, as the apparent owner thereof. They connote that certain degree of permanency referred to in Matter of Stewart v. Carrington (203 Misc. 543, supra); New York State Trailer Coach Assn. v. Steckel (208 Misc. 308, revd. on other grounds 3 A D 2d 643, supra) and Interstate Lien Corp. v. Schmidt (180 Misc. 910, supra) where the court stated as follows (p. 912): “ Generally, in determining when property, personal in its nature, becomes part of the real property several tests may be applied: First, to give to articles, personal in their nature, the character of real estate, the annexation must be of a permanent nature; second, adaptibility to the use of the freehold; third, the intention of the parties at the time of making the annexation. (Voorhees v. McGinnis, 48 N. Y. 278, 282.) ”
The same degree of permanency applies to the fixtures referred to (Interstate Lien Corp. v. Schmidt, 180 Misc. 910, 913, supra): ‘ ‘ When considering whether fixtures are personal property, exception has been made for taxation purposes by our Legislature. (General Construction Law, § 39.) ”
In contrast house trailers, mounted on wheels and not on permanent foundations, particularly when situated in trailer parks or trailer camps together with a large number of other trailers, by their very nature and appearance, disavow their identity as land, real property or real estate. It could fairly be stated that it would be a matter of common knowledge that they *297 were not the property of the owner of the land on which they were standing but each belonged to individual owners.
As I have pointed out the decisions to date are in conflict. I subscribe to the belief that there is a point beyond which the Legislature cannot go in declaring that personal property, in no sense real estate, is nevertheless land, real estate or real property for the purposes of chapter 60 of the Consolidated Laws (Tax Law). Once said point is passed, as I feel it has been under the facts of this case, the legislation is unconstitutional.
I, therefore, hold that subdivision 6-a (pars, a, b) of section 2 of the Tax Law is invalid as being in violation of section 6 of article I of the Constitution of the State of New York and the Fourteenth Amendment of the Constitution of the United States.
As previously stated, I am also of the opinion that the so-called Elbridge House Trailer Ordinance of the Town of Elbridge, Onondaga County, New York enacted February 25, 1953 as amended providing for a trailer license, being “ Exhibit 14” received in evidence, is constitutional, valid and enforcible.
Submit judgment in accordance with this decision.