Howard T. Hogan, J.
Plaintiff, the Town of North Hemp-stead, has instituted an action against three defendants engaged in mining sand and gravel within the unincorporated area of the town, to enjoin them from conducting sand mining or excavation until such time as they shall obtain from the plaintiff a permit as required by its “ Ordinance Relating to Sand Bank and Pit, Topsoil Removal and Other Excavations.”
Two of the defendants now move for summary judgment on their counterclaims and for judgment dismissing the complaint. Considered on these motions in addition to the pleadings and various affidavits, are the examinations before trial of the Supervisor of the Town of North Hempstead, the manager of its Building Department, its consulting engineer and various officers and employees of the defendants.
Few of the material facts are in dispute. Defendants or their predecessors or assignors have been engaged continuously in sand mining operations in this area for some years prior to 1946. On January 8, 1946, the plaintiff’s Town Board enacted an ordinance regulating sand banks and pits, topsoil removal and other excavations. Sections 1 and 2 of said ordinance read as follows:
“ Section 1. Declaration of Policy. It is hereby declared to be the policy of the Town to provide for the proper use of land to prevent all manner of excavations which create pits, holes or hollows in the earth, leaving it in a hazardous or dangerous state, or cause soil erosion which depletes the land of its natural vegetative cover and supply of organic material, renders such land unproductive and unsuitable for agricultural purposes and undesirable for building homes, resulting in lower land values. By this ordinance the Town Board seeks to remove the danger of health and life caused by deep excavations remaining in the ground; and the stripping of topsoil, thereby resulting in damage to agricultural crops through dust storms in dry weather, by exposure of the bare earth to wind action, and in wet periods, by pools of water, which ordinance will promote the safety, health and general welfare of the people of the Town.
“ Section 2. Excavations included in Ordinance. No excavation for purposes other than the construction of a wall, driveway, sidewalk, building or part thereof, or as permitted by Section 9 of this article, shall be commenced except in conformity with the provisions of this article. ’ ’
*730 It further provided (§ 3) that “ Before any excavation be commenced * * * the owner, lessee or agent of the premises shall obtain a written permit therefor from the Town Board.” And “ Section 7. The Officer designated by the Town Board to issue such permits shall charge and collect for. each such permit: (a) 8and Bank and Pit Excavations. A minin-mm fee of $200 for an excavation volume not to exceed 20,000 cu. yds. For excavations exceeding 20,000 cu. yds. the minirmrm fee shall be $200 plus one cent for each additional cu. yd. or fraction thereof.”
No attempt was made to enforce this ordinance against the defendants until March 5, 1957 when defendants were notified to obtain a permit or cease and desist from their operations. When this was not done, plaintiff instituted this action.
Defendants’ answers admit their operation and failure to apply for or obtain permits after the notice of March 5, 1957. They plead as affirmative defenses: (1) that they had established nonconforming uses at the time of the adoption of the ordinance; (2) that the ordinance refers only to operations commenced after it became effective and hence has no application to the defendants’ activities; (3) that the amount of 1 cent per yard required to be paid by defendants as a license fee would exceed $34,000 annually,' based upon their estimated operations, an amount so disproportionate to the reasonable expenses of administering the ordinance as to be illegal, arbitrary, unconstitutional, invalid and unreasonable; (4) that plaintiff has not in fact expended any moneys as administrative expenses since the adoption of the ordinance; (5) that the Board of Appeals of plaintiff town, on January 20, 1947, granted defendants’ predecessor a temporary variance for the mining and processing of sand and gravel on certain premises for a period of 15 years, thus indicating that the ordinance of January 8, 1946 has no applicability to said premises; (6) that the ordinance was designed to prevent the creation of pits, holes or hollows in the earth, leaving it in a dangerous condition, whereas defendants’ operations do none of these things and do not create hazards.
They plead, in addition, three counterclaims, to wit: (1) that defendants are entitled to judgment declaratory of their rights and particularly that the ordinance regulates only operations commenced after its adoption, and never was intended to apply to them; (2) that the reasonable cost of administering the ordinance insofar as it might apply to them, would not exceed $1,500 a year and that since the charge of 1 cent per cubic yard is grossly excessive, when applied to them and amounts to an *731 illegal tax rather than a proper licensing fee, they are entitled to judgment declaring the ordinance illegal and void,- and (3) that the type of operation conducted by defendants is not such as to be included within the scope of the ordinance, hence they -are entitled to judgment that the ordinance does not apply to them.
As to the first counterclaim, defendants ’ motion for judgment is denied and the counterclaim dismissed, even though plaintiff has not moved for such relief, upon the authority of rule 113 of the Rules of Civil Practice. The ordinance in question is purely regulatory in nature, adopted under the powers conferred by subdivision 23 of section 130 and not under section 261 (the grant of power to zone) of the Town Law. A nonconforming use giving the owners freedom from such regulation 'cannot be established. Their situation is akin to that of automobile owners who are not exempt from the provisions of the compulsory inspection law because they owned their particular automobiles before its adoption.
Nor is there merit in their contention that the ordinance, by its express language, is intended to apply only to operations commenced after its adoption. It is a well-settled rule of statutory construction that an act shall be interpreted in the light of the mischief felt and the objects and the remedy in view (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 95 and cases cited therein). The Town Board cannot have intended in 1946, that an established operation should be permitted to continue untrammeled while a new one of precisely the same nature required drastic controls. It is equally well settled that ‘1 A construction of a statute is favored which makes it operate equally on all classes of persons and avoids unjust discrimination” (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 147). Accordingly, the court holds that the ordinance is intended to operate equally upon all operations of a similar nature, regardless of the date upon which each was commenced. This interpretation needs no reconciliation with the Declaration of Policy, the preamble of the ordinance (supra).
Judgment is likewise granted dismissing the third counterclaim. There is no merit in defendants’ contention that the ordinance permits them to conduct bank excavations so long as they do not create holes below grade or hollows. The purpose of the ordinance is declared to be ‘£ to prevent all manner of excavations which create pits, holes, or hollows in the earth, leaving it in a dangerous state ”. (§1.) It further provides at section 4, entitled ££ Sand Bank and Pit Excavations ”, that:
*732 “ No such excavation shall be made: (a) Within Twenty (20) feet of any property line and must not be greater than 10 feet below the established grade, unless the sidewalls remain at an incline of at least 45 degrees or are supported by retaining equipment equal to that specified for building excavations, except in the case of banlc excavations same may begin at the property line.” (Emphasis supplied.)
Here is an express inclusion of bank excavations. It is no answer to say that defendants so far have not encroached on property lines, created vertical holes or hollows below grade, or created hazardous conditions such as banks with insufficient angles of repose. The Legislature has recognized the need for local control of such operations (Town Law, § 130, subd. 23; Village Law, § 89, subd. 67), and the town is well within its rights in guarding against these possibilities. The operations of the defendants clearly fall within the terms of the ordinance.
However, the second counterclaim must be sustained on the facts before the court. Even if it accepts the figures of the plaintiff (which quite obviously are exaggerated), the cost of administering the ordinance, it admits, will approximate only $6,100 per annum.
In his examination before trial the Supervisor of the plaintiff town conceded that the fees fixed in the ordinance were intended to cover the costs of administration and supervision, and were not intended as a tax. They were to cover the cost of issuing permits and the inspection of operations and were to be 41 measured by the time spent doing the work required under the Ordinance.”
The manager of the town’s Building Department then admitted that the Clerk whose duty it is to issue all permits earns $4,200 per annum, and that it would take her but a few minutes to prepare and issue such a permit as called for by the ordinance. He would need no additions to Ms present staff of office workers and inspectors nor any additional appropriation. One of his regular inspectors could make the required inspection in one hour each week.
The defendants’ estimate of a total administrative cost of $1,500 per anmrm seems much more realistic, but even if plaintiff’s figure is accepted for the purposes of this motion, it still bears no reasonable relation to the amount which the ordinance would reqMre the defendants to pay on an average operation each year —a sum estimated to be approximately $34,000.
It is well settled that “As a regulatory measure the license fee is restricted to an amount wMch will compensate for issmng *733 and recording the license and pay for inspection to see to the enforcing of the license provisions.” (Sperling v. Valentine, 176 Misc. 826 and cases cited therein; Miller v. City of Long Beach, 206 Misc. 104.)
Under the circumstances, no issue of fact exists as to the reasonableness of the license fee as applied to these defendants, who appear to be the only operators in the unincorporated area of the town. This being so, it follows that section 7 of the ordinance, which levies a charge of 1 cent on every cubic yard of sand or gravel removed by the defendants, is arbitrary, unreasonable, exorbitant and invalid.
However, since the aforesaid section can be excised from the ordinance without affecting the remainder, judgment on defendants ’ counterclaim is limited to the declaration that only section 7 of the ordinance is invalid and unenforcible as to the defendants, not because no fee may be levied, but because the fee fixed therein is grossly excessive. The remainder of the ordinance is unaffected and is binding upon the defendants, who must apply for and obtain permits (the court is limited to declaring the present fee improper; it cannot fix or suggest a proper fee, since that lies solely in the province of the Town Board) if they wish to continue their operations.
Authority for a severance of this nature is found in People ex rel. Alpha Portland Cement Co. v. Knapp (230 N. Y. 48, 60) wherein Judge Cardozo said: ” In this state, we have gone far in subdividing statutes, and sustaining them so far as valid. * * * The tendency is, I think, a wholesome one. Severance does not depend upon the separation of the good from the bad by paragraphs or sentences in the text of the enactment. * * * The principle of division is not a principle of form.
It is a principle of function. The question is in every case whether the legislature, if partial invalidity had been foreseen, would have wished the statute to be enforced with the invalid part exscinded, or rejected altogether. The answer must be reached pragmatically, by the exercise of good sense and sound judgment, by considering how the statutory rule will function if the knife is laid to the branch instead of at the roots.”
Rule 113 of the Rules of Civil Practice permits the court, on a motion of this nature, to render judgment in favor of either party, even in the absence of a cross motion therefor. Although an application for summary judgment in an action for an injunction is not one of those actions enumerated in rule 113, that procedure in this instance is allowable (Matter of Whalen v. Corsi, 279 App. Div. 1113). Accordingly, summary judgment is granted in favor of the two moving defendants *734 declaring section 7 of the ordinance invalid as applied to them, and for plaintiff on its complaint enjoining defendants from continuing their operations until they have obtained permits as required by the pertinent, valid sections of the ordinance.
Settle judgment on notice.