Julian A. Hertz, J.
The defendant moves herein on multiple grounds to dismiss the instant complaint, pursuant to section 175.03 of the New York City Health Code, in which he is charged with failing to pay (as of Oct. 1,1972) certain biennial registra *680 tion fees for radiation installations and equipment, violation of which constitutes a misdemeanor.
The Bureau of Radiation Control of the Department of Health of the City of New York initially billed the defendant for $620, a huge increase over the $25 he was charged for his entire office in 1970 and the $10 fee which he was billed for the preceding two-year period. The change was the result of amendments to subdivision (a) of section 5.09 of the Health Code which were adopted in June of 1972 and which required the payment of $40 for each. X-ray tube head inspected biennially, $80 for each X-ray tube head inspected annually, $370 for each priority IV radioactive materials installation, $220 for each priority V radioactive materials installation, and $280 for each equivalent priority II. radioactive materials installation. The defendant, admittedly subject to these provisions, informed the city that, even under these new provisions, he should have been required to pay only $460. A correction was made in his bill in the beginning of March, 1973, at which time proceedings against him had already been instituted. Shortly after the adjustment, the defendant paid the fee under protest.
The defendant’s motion to dismiss is based on several grounds: (1) the 1972 revised fee schedule under which this prosecution was brought is unconstitutional under the doctrine of Adlerstein v. City of New York (11 Misc 2d 754, affd. 7 A D 2d 717, affd. 6 N Y 2d 740), as being excessive for an administratively imposed fee; (2) the defendant cannot be convicted on a complaint which charges failure to pay a fee in excess of the amount assessable even under the new schedule; (3) discriminatory enforcement; and (4) the circumstances of this case, as well as the fact that the severe professional penalties which the defendant could suffer from a misdemeanor conviction warrant dismissal in the interest of justice.
The defendant contends that the fee schedule at issue here would probably bring in sufficient funds to exceed, probably substantially, the entire budget of the Bureau of Radiation Control and would, thus, contribute to the city’s general revenues. If that be the fact, the schedule would, in his opinion, represent an improper exercise of an administrative agency’s regulatory authority. According to Adlerstein v. City of New York (supra), the fee which may be charged for the issuance of a license is such that will compensate the licensing authority for issuing and recording the license and pay for inspection to See to enforcement of the license provisions. The Corporation Counsel claims that the fees involved here are not licensing fees, *681 but regulatory fees, and that the two are quite distinctive. While it is true that licensing and regulation are not identical, the fees . chargeable in either case must bear a reasonable relation to the cost of enforcing the program. (See Gannett Co. v. City of Rochester, 69 Misc 2d 619; Falcone v. Zingerline, 61 Misc 2d 885; Larsen Baking Co. v. City of New York, 30 A D 2d 400, affd. 24 N Y 2d 1036; Town of North Hempstead v. Colonial Sand & Stone Co., 14 Misc 2d 727; Barnes v. Gorham, 12 Misc 2d 285; Miller v. City of Long Beach, 206 Misc. 104; and Sperling v. Valentine, 176 Misc. 826.) When the money collected through a licensing or regulatory scheme exceeds the costs of administration, then the fee .schedule is, in effect, a revenue measure, and there is no question that only the Legislature is empowered to tax. An administrative agency certainly has no such authority.
Defendant’s argument in support of his motion was made on papers in conclusory terms. In order to avoid protracted proceedings, the court deemed it appropriate to order a hearing on the question of whether the fee schedule here is, in fact, excessive and thus unconstitutional. Further, the defendant, without objection, submitted the record of the examinations before trial in a declaratory judgment action pending in the Supreme Court of New York County brought by physicians similarly affected by the fee schedule involved here. Therein, statements were made by several city employees, Saul J. Harris, Director of the Bureau of Radiation Control, Julian Jackson, Assistant Director for Administration, and Dr. James Arthur Greenberg, former program and policy analyst for the Radiation Control Bureau, on the same subject as testimony elicited at the hearing held by this court. While lip service was accorded the agency’s limited objective of assessing fees covering merely the cost of inspection and registration, sworn statements at the examination before trial of the Supreme Court declaratory action undermine that purpose.
Dr. Greenberg’s testimony clearly indicates that he viewed his employment as requiring implementation of the Mayor’s policy, even when that policy resulted in overstepping the bounds of administrative authority. On pages 171 to 173 of the examination before trial (BBT), the following exchange is recorded:
Q. You further state in the same paragraph, do you know, “It seems that these omissions are contrary to the declared policy of the Lindsay Administration because this policy requests that all inspection programs levy a fee adequate to cover the full cost of the program.”
You did make that statement in your letter of January 10th?
A. Correct.
*682 Q. Now, could you tell us what that policy was and how it started?
A. That policy was that the programs which perform inspections should levy a fee, an inspection fee or a registration fee or a license fee, which would be adequate to cover the total cost of operation of the bureau that was responsible for performing the inspections.
Q. In other words, the policy was to cover more than just the cost of the inspection, but the entire bureaus involved which were responsible for the inspections ?
A. Correct.
Q. Was that program stated in a memorandum or —
A. You mean that policy?
Q. —in a policy pronouncement of some sort?
A. I think it was, but I am not sure. It was indicated to me verbally by a number of people.
Q. Who were some of the people that would have indicated that policy to you verbally?
A. Jeffrey Weiss, who was Director of Program Planning and Budget, the Deputy Administrator in the Health Services Administration; Mr. Charles Atkins, who was Director of the Office of Program Analysis in the Health Services Administration at the time, and Mr. James P. Sheehy, who was Associate Deputy Director of the Environmental Health Services in the Health Department at the time, for example.
Q. Did they provide you with any policy documents indicating this policy?
A. I don’t remember, I will be honest with you. I should mention also that the Commissioner of Health, Dr. Cimino at the time, declared verbally to me that this was his policy.
At another point, Dr. Greenberg, who had, after all, been employed as a program and policy analyst for the Radiation Control Bureau, noted (BBT, pp. 169-170):
A. My understanding of what it refers to is administrational cost of processing payrolls; of administration of civil service tests; of an employee counseling service, and other such administrational services in the City of New York.
Q. In other words, a certain portion of the general overhead of the City of New York applied to the function of the Bureau of Radiation Control; is that correct?
A. That’s correct, yes. It probably would include the Budget Bureau as well as the Mayor’s Office. I am not sure.
Further, on pages 170 to 171, Dr. Greenberg replied negatively to the question of whether a certain report by Professor Blatz had failed to include in its calculations, the cost of central administrational services along with other .specified costs. In response to whether the policy was to cover not just the cost of the inspection, but the entire expense of the bureaus involved which were responsible for the inspections, Dr. Greenberg stated that that was correct. (BBT, pp. 171-172.)
The testimony of Morris Bregman, a senior accountant for the Department of Health Special Services, appears to confirm the fact that the fees to be collected were intended to apply not only to the cost of administering the registration ap$ inspec *683 tion program, but to contribute as well to the general revenues of the city. The following exchange is found on page 182 of the BBT:
Q. In other words, a certain portion of the general overhead of the City of New York applied to the function of the Bureau of Radiation Control; is that correct?
A. That’s correct, yes. It probably would include the Budget Bureau as well in [sic] the Mayor’s Office. I am not sure.
On that same page, Mr. Bregman was asked and responded as follows:
Q. Could you tell us what areas are covered by that amount, and particularly with respect to Plaintiff’s Exhibit No. 36, what is meant by the terms “ central services,” “executive management” and “general administration”?
A. Well, generally speaking, when we talk about central services, we are talking about central agencies such as Budget, Comptroller’s Office, Finance Administration, Law Department, Municipal Service Administration, and so forth.
When you talk about executive management, we are talking basically about the Health Services Administration and all it entails. It has its own Purchase Department, its own Maintenance Department and so forth.
And then you have general administration, which is Health Department personnel, Audits and Accounts, your Purchasing Department, your Maintenance Department again. And then you have general services, and so forth. It’s broken up into those three categories.
From the foregoing testimony, it is clear that, contrary to the assertion by the Corporation Counsel that the fee schedule adopted by the Board of Health on June 15, 1972 constitutes a valid exercise of administrative authority since it bears a reasonable relation to the costs of registration and inspection, in fact the money to be collected through implementation of the new fees was expected to contribute to funding, not only the Badiation Control Program as well, but to the city’s general administrative costs. In Adlerstein v. City of New York (11 Misc 2d 754, 755, supra), the court declared that the: “inspections referred to have nothing to do with licensing. They are for the purpose of protecting the city’s inhabitants from the dangers attendant upon inferior workmanship. This expense would be precisely the same and equally necessary whether the artisans doing the work were licensed or not. ’ ’ While registration, rather than licensing, is involved in the instant case, the reasoning of the court in Adlerstem is no less applicable. The power of the Board of Health is limited to recouping the cost of inspection and registration. In enacting the present fee schedule, it exceeded that power and infringed upon the legislative authority. Thus, the June 15, 1972 amendments to subdivision (a) of section 5.09 of the Health Code are unconstitutional.
*684 Defendant also argues that enforcement of the fee schedule was discriminatory and in violation of the equal protection clause of the Fourteenth Amendment. This court, however, rejects that contention. (See Roth v. Lehman, N. Y. L. J., Nov. 7, 1974, p. 19, col. 7, for an extended discussion of precisely the issue of whether the fees promulgated by the Board of Health on June 15, 1972 were selectively enforced so as to violate the United States Constitution.) The court herein adopts the reasoning in Lehman to the extent pertinent to the facts of this case.
The defendant further claims that the particular circumstances of this case warrant dismissal of the complaint against him in the interest of justice pursuant to CPL 170.40. According to People v. Clayton (41 A D 2d 204), the provisions of CPL 210.40 and CPL 210.45, which deal specifically with motions to dismiss indictments, require a hearing when either the prosecution or defendant moves to dismiss the indictment in furtherance of justice, and when the court considers sua sponte a dismissal for the same reason, it should not do so until fair notice of its intention has been given to the parties and a hearing has been held. (See, also, People v. Kwok Ming Chan, 45 A D 2d 613.) This rationale applies equally in the case of an information or misdemeanor complaint. Since this court is basing its decision on the fact that subdivision (a) of section 5.09 of the Health Code is invalid, it is unnecessary to order a hearing. It must be noted, however, that were the court not dismissing the complaint pursuant to CPL 170.35, the court would be strongly inclined to give serious consideration to a dismissal in the interest of justice in view of the fact that payment was made shortly after the city submitted its reduced bill, albeit under protest, and because of the sharp legal issue over the validity of the vastly increased fee schedule, a matter then and now the subject of an ongoing challenge in the declaratory judgment action pending in the Supreme Court. Moreover, the court notes that the power to dismiss in the interest of justice was recognized in the Code of Criminal Procedure of 1881, and, at common law, courts claimed the right to resort to nolle prosequi.
Conviction here would subject this physician defendant to the known incidents of a criminal record, as well as the potential for serious sanctions directed against his license.
Consequently, the motion to dismiss the complaint is granted in accordance with the foregoing.