Harold Baer, J.
This is an action in which the plaintiffs, practicing physicians specializing in radiology, challenge the validity of the registration and reregistration fees imposed by the Department of Health for X-ray tube heads and radioactive materials installations. By stipulation, the parties submitted the oral examinations of the plaintiffs, the testimony of the former Administrator of the Health Services Administration, four employees of the administration and two volumes of exhibits from the examinations. The stipulation also sets forth what the witnesses would testify to if called.
Briefly the facts are as follows: Prior to 1970, the plaintiffs’ offices were registered, pursuant to article 175 of the New York City Health Code, by payment of a $10 fee. In 1970, the *479 fee was increased from $10 to $25 by the Board of Health. On June 15, 1972, the Board of Health passed a new resolution amending subdivision (a) of section 5.09 of the Health Code which established a new set of fees, which fees were a prerequisite for registration under section M5.03 of the Health Code. The new fee schedules provided for a biennial fee at $80 per tube head on the equipment of the plaintiffs, and a fee of between $200 to $400 each for the various categories of radioactive materials installations. It is this fee schedule which the plaintiffs seek to invalidate.
It is necessary to distinguish between taxes levied in the form of fees and fees which are established to defray the specific function of licensing or registration. A tax levied in the form of a fee, in order to be valid must originate from a legislative body, be it the State Legislature or a local legislative body, pursuant to enabling legislation. The purpose of such a "fee” is concededly to raise revenue. The license "fees” for the registration of the professions are valid if enacted, not under the police power, but rather under the power of taxation (People ex rel. Moskowitz v Jenkins, 202 NY 53). A true fee on the other hand is a charge imposed to defray the cost of a particular service rendered by government to the individual (Matter of Hanson v Griffiths, 204 Misc 736, affd 283 App Div 662).
In dealing with a licensing or registration fee imposed by an administrative agency, as in the case at bar, such a fee may not exceed the sum which will compensate the licensing or registration authority, for issuing and recording the license or registration and pay for the inspection to see to the enforcing of the licensing or registration provisions (Alderstein v City of New York, 11 Misc 2d 754, affd 1 AD2d 717, affd 6 NY2d 740; Town of North Hempstead v Colonial Sand & Stone Co., 14 Misc 2d 727). Furthermore, such a fee cannot include a charge for the general regulation of the industry (Sperling v Valentine, 176 Misc 826; Falcone v Zingerline, 61 Misc 2d 885), or as the court stated in Sperling (p 829): "While prevention of threatened violations of substantive law is the ultimate object of all licensing, the cost of enforcement of the general regulations cannot be made the measure of the fee charged. These costs exist independently of this local law whose immediate object is identification of persons in the trade to the end that they may be more amenable to the enforcement of existing laws.”
*480 A review of the exhibits and testimony reveals that the fee schedule was designed to recover the costs of the entire payroll of the Bureau of Radiation Control. Included, were all of the administrative personnel, all of the public health sanitarians and inspection personnel and all of the research physicists and scientists. Added to this were fringe benefits of an additional 29%, and overhead expenses of 26%. It is clear that, although a certain percentage of administrative personnel and inspectors was involved in the process of registration and enforcement, the balance of the group was engaged in exercising general police powers for the protection of the public at large and in research. The bureau is involved in a host of programs related to radiation control, which involve the Mayor’s Technical Advisory Commission on Radiation and the investigation of nuclear accidents. All of these programs have been included in the over-all budget of the Bureau of Radiation Control, and were used in the computation of the license fees in question. Therefore, this court finds that the fees established were not computed in amounts to defray the cost of licensing and inspecting the plaintiffs’ installation, but rather those fees were computed in such a manner as to defray the total costs of the city’s radiation control program, including areas unrelated to the plaintiffs’ activities. Thus, the "fees” are a tax to raise revenue and not a fee for registration which the Board of Health may establish without statutory authority.
Accordingly, it is the decision of this court that the fees established by the Board of Health on June 15, 1972 (New York City Health Code, § 5.09, subd [a]) are invalid, as they constitute an attempt to tax to obtain revenue for the entire expense of the City of New York’s radiation control program. Fees paid under protest should be returned less the reasonable fee fixed by the Board of Health prior to the amendment of June 15, 1972. Settle judgment.