Frank S. Rossetti, J.
The subject claim was filed by Wanda Lazor, in her fiduciary capacity, as the representative of six members of the ‘‘ Gagnon” family all of whom were involved in a tragic and dreadful automobile accident, which claimed the lives of Normand and Anna Gagnon, and their two infant children, Donald and Jeanne, and seriously injured two other infant children, Diane and Elaine.
This verified claim, timely filed, alleges under paragraph 2 the. following: “This Claim is for negligence of the State in constructing and maintaining a highway known as Route 7, in the Town of Afton, County of Chenago and particularly in negligently painting roadway markings and highway .signs so as to improperly regulate traffic on the said highway and the •said State was also negligent in that its Motor Vehicle Department and Department of .State Police did allow one gary king to operate his motor vehicle upon the highways of the State of New *939 York after numerous and flagrant vehicle and traffic violations had made him a danger to the Public at large. ’ ’
At the commencement of this trial, the court approved a stipulation by counsel for the respective parties to try and preliminarily decide the issue of liability with the reservation that, if required, the proof of damages would be heard at a later date.
The undisputed facts and .surrounding circumstances which caused the fatalities .and injuries to the ‘ ‘ Gagnon ’ ’ family are as follows:
The accident occurred on July 20,1969 at about 7:30 p.m. on a two-lane public highway commonly known as Route 7 in the Town of Afton. The ‘ ‘ Gagnon ’ ’ vehicle was utilizing one of the lanes in a westerly direction when it was struck head-on by an automobile being driven by one Gary King, who was 20 years of age at the time. The “ King ” vehicle had been proceeding east and, in attempting to pass two cars and a tractor-trailer, he pulled out into the oncoming westerly lane. At about that time, “ King ” was approaching .a curve in the road and was unable to get back into his lane before striking the “ Gagnon ” vehicle. The uncontroverted proof adduced at the trial showed that Route 7, in the immediate area of the accident, was divided by a solid yellow line which indicated that this was a “ no-passing zone ” and that ‘ ‘ King ’ ’ was on the wrong side of this yellow barrier at the time of the impact. (It should also be noted that the “ King ” vehicle had contained three passengers, two of whom also died as a result of this accident.)
In attempting to hold the State responsible, there were two theories advanced by claimant. Firstly, it is contended that the defendant had negligently constructed and maintained Route 7 ; and secondly, that the State allowed “ King ” to drive upon the highway knowingly that he was a danger to the public at large.
There was absolutely no proof presented which would convince us that the State had negligently or improperly constructed and/or maintained that portion of the highway where the accident occurred. Accordingly, the court rejects this theory in toto.
In dealing with the second part of claimant’s contention, it was established that “ King’s ” driver’s license was revoked by the Department of Motor Vehicles in June, 1966 and then restored to him one year later. It is suggested that this affirmative action of restoring a license after having revoked same directly resulted in allowing ‘ ‘ King ’ ’ to operate his vehicle on July 20,1969.
In addition thereto, it was shown that on the fatal day, about 90 minutes before the accident, a State Trooper had cited *940 “ King” for speeding on Eonte 81, to wit, driving 86 miles per hour in-a 65 mile per hour zone. Consequently, claimant alleges that the State Trooper was under a duty to the public at large to remove .such a person [King] from the highways and because of his failure to do so, the State’s actions were directly responsible for the subject accident.
. The records produced by the Department of Motor Vehicles established that “ King ” had been convicted of four violations which precipitated the revocation of his driver’s license on June 8,1966. The first three infractions involved defective equipment, operating without insurance, and driving an unregistered vehicle. They all occurred on May 5, 1966. One month thereafter, “ King ” was once again cited for driving without insurance and his license was thereupon revoked. On June 14, 1967, the Motor Vehicle Department approved “ King’s ” application for restoration of his license and there were no further infrac-tions until July 20,1969 which is the date of the afore-mentioned, speeding violation and the subsequent accident which has given rise to this claim.
Upon conducting an investigation at the accident scene, it was learned that the ‘ King ’ ’ vehicle was equipped with ‘ ‘ one bad tire ’ ’ which may have been below the acceptable level, and it was further ascertained that there were approximately 17 cans of beer in the vehicle, 5 of which were empty. Based upon these cumulative facts, claimant submits for the court’s consideration that ‘ ‘ King’s ’ ’ vehicle and his driving of same was so hazardous as to warrant a removal of .same from the highways by the State Trooper 90 minutes prior to the accident.
The court has closely scrutinized all of the oral testimony as well as the documentary proof presented at the trial. We find no merit in claimant’s argument that the State improperly restored “ King’s ” license after first having revoked it. This, in and of itself, was not an improvident exercise of authority from which actionable negligence would attach. We fail to see any distinction between the instant situation and that which was expounded in Granger v. State of New York, (14 A D 2d 645). The theory of liability advanced in the Granger (supra), cáse was the State’s failure to revoke the owner’s motor vehicle registration after notice of thé termination, by cancellation, of Ms insurance policy had been filed with the Bureau of Motor Vehicles by his insurer. Had revocation been effected, the claim contends, “.said [auto] would not have been on the highway”. The court, citing Steitz v. City of Beacon, 295 N. Y. 51, 56 and Murrain v. Wilson Line, 270 App. Div. 372, affd 296 N, Y. 845, *941 stated that “neglect in the performance of [the statute’s] requirements create [d] no civil liability to individuals ” (14 A D 2d 645, 646).
Certainly, in the case at bar, the Department of Motor Vehicles did not condone “ King’s ” reckless driving by restoring his license. Even if' we were to concede that the State’s action was totally unjustifiable, it cannot seriously be considered to have been a proximate cause of the accident in which “ King ” was involved some two years thereafter. (See Rowe v. State of New York, 206 Misc. 1035 and Chikofsky v. State of New York, 203 Misc. 646.)
The crucial question which must be dealt with herein relates to the State Trooper’s actions at the time that he stopped “King” for speeding. However, once again, the crux of the legal principle involved is one of causation. There is no dispute that “ King ” was traveling at an excessive rate of speed when he was stopped by the trooper 90 minutes before the fatal accident. Notwithstanding this blatant violation, there was no showing that this State officer had acted improperly in performing his sworn duties. The empty beer cans were not discovered until after the accident occurred. Likewise, it was only at the accident scene that the King ’ ’ vehicle was found to have three worn tires and one which was below acceptable standards. There was no showing that the trooper knew or should have known that “ King ’’ and his companions were drinking beer at the time of the speeding infraction and, additionally, there was no evidence which would support claimant’s contention that the “King” vehicle was so hazardous as to warrant its removal from the highway.
It is well established that in order to exact liability against the State, claimant must first prove negligence and then further prove that such negligence was the proximate cause of the injuries and resulting deaths. (Stanton v. State of New York, 29 A D 2d 612.) Based upon the entire trial record before this court, we cannot in good conscience make such a finding.
Negligence on the part of the State cannot be predicated upon any acts of “ King ” once he continued driving after being cited for speeding. Negligence, if any, must be predicated on the actions of the trooper only if it is shown that he did not act in a careful and prudent manner under the circumstances. This has not been accomplished and, as such, the causation principle does not even come into play.
Is there any doubt that the trooper would have removed “King” from the highway had he been able to forsee the *942 tragedy which' later, occurred? In determining the proper answer to that question we must look at the facts as they existed 90 minutes before the accident, not aided or enlightened by those which subsequently took place. Nobody is so gifted with foresight that he can devine all possible human events in advance and even if the State, by its agents, did possess .such powers of perception, we cannot be certain that “King’s” wanton act would have been extinguished.
There are no words to adequately describe the sympathy which this court has for the “ Gagnon ” family, and it is not without emotion that we, as a matter of law and reason, must dismiss this claim.