Henry W. Lengyel, J.
The claims on which the instant motions are based developed from an automobile accident on August 31, 1973, when a car driven by Uldis Baumanis struck a vehicle operated by John Southworth. His wife, Alice South-worth, was a passenger in the vehicle. Mrs. Southworth died as a result of injuries received in the accident. The gravamen of both claims is that the State, through its agents, or employees, was at least partially and proximately at fault for the accident because the Motor Vehicle Department negligently and without authorization issued a temporary driver’s license to Mr. Baumanis on August 29, 1973 under its experimental Driving While Intoxicated (DWI) Counter-Attack Program in Onondaga County.
After filing the notices of claim, claimant moved for an examination before trial of the District Director of the DWI Counter-Attack Program; for the discovery and inspection of various State documents; and, for permission to correct the date of the occurrence of the accident in paragraph 4 of Claim No. 58835. The State then filed a cross motion to dismiss both claims under CPLR 3211 (subd [a], pars 2, 7), alleging that they failed to state a cause of action and that the court lacked jurisdiction over the subject matter.
I will decide the motion to dismiss first. Both counsel provided the court with briefs and factual evidence through affidavits. I must, of course, consider and weigh evidence submitted with or in opposition to a motion to dismiss. (CPLR 3211, subd [c].) Courts utilize two standards for deciding motions to dismiss for failure to state a cause of action depending on whether or not extrinsic evidence is offered with the motion. If no evidence is presented, the court construes the pleading liberally and presumes that the allegations pleaded are true. The sole question is whether the pleading states a cause of action. (Cohn v Lionel Corp., 21 NY2d 559.) However, if evidence is offered, as was the case herein, the test used is not whether the pleading states a cause of action but whether a cause of action exists. (Kelly v Bank of Buffalo, *402 32 AD2d 875.) (For a general discussion of this area see 4 Weinstein-Korn-Miller, NY Civ Prac, par 3211.44 and 6 Carmody-Wait 2d, NY Practice, § 38:19.)
From a review of all the evidence submitted, I shall assume that the following facts are true.
On August 21, 1973 Uldis Baumanis appeared before a Town Justice in the Town of Onondaga and was convicted of the charge of driving while intoxicated. That court sent the conviction certificate to the Department of Motor Vehicles in Albany where it arrived on August 27, 1973. Unfortunately, however, the Town Justice did not endorse the conviction on Mr. Baumanis’s license. (Vehicle and Traffic Law, § 514, subd 2.) On September 11, 1973 the Department of Motor Vehicles issued a revocation order.
On August 22, 1973 Mr. Baumanis appeared before the Town Court of the Town of Cicero and entered a plea of guilty to a reduced charge of driving while his ability was impaired. This charge resulted from a different incident than the one he had pleaded to on August 21 in the Town of Onondaga and was reduced from a charge of driving while intoxicated. I was advised by the State’s memorandum of law, which claimant’s counsel did not dispute, that the Cicero Town Court retained Mr. Baumanis’s license and forwarded it along with the conviction certificate to the Syracuse Office of the Department of Motor Vehicles, wherein the DWI Counter-Attack Program was located.
Thereafter, Mr. Baumanis went to the offices of the DWI Counter-Attack Program. At this stage of the proceeding, the court does not know how many times or when Mr. Baumanis was at the program, other than the fact that he was seen there on August 29, 1973. The DWI Counter-Attack Program was an experimental program for Onondaga County which was operated out of the office of the New York State Department of Motor Vehicles. The program was supposed to assist in the rehabilitation of automobile drivers convicted of driving while intoxicated or while their ability was impaired; however, counsel did not provide me with any detailed evidence outlining the complete scope of the program. During Mr. Baumanis’s contact with the program, he completed the form for his new permanent driver’s license, to replace the one suspended by his conviction of driving while impaired on August 22. He was accepted into the DWI Counter-Attack Program. Also on August 29, 1973, the program issued him a *403 temporary driver’s license. Two days later, on August 31, 1973, Mr. Baumanis was involved in the automobile accident with the Southworth vehicle. The vehicle driven by Baumanis crossed the double-solid-center line at the crest of a hill and crashed head-on into the Southworth vehicle. A blood test showed that Mr. Baumanis had an alcoholic content of .352% at the time of the accident, and he was, therefore, charged with driving while intoxicated.
As previously stated, the State’s motion to dismiss pursuant to CPLR 3211 (subd [a], pars 2, 7), asserts that this court does not have jurisdiction over the subject matter and that the claimant has failed to state a cause of action. The State contends that it cannot be held responsible for the tortious acts of its employees or its agents performing a purely governmental function requiring the exercise of discretion or judgment of a quasi-judicial nature; and, further, that the alleged negligence, if there was any, was not a proximate cause of the accident.
In analyzing the State’s potential liability for the acts of its employee or of its agents, the courts have woven a complex web of decisions. While section 8 of the Court of Claims Act waived the State’s immunity for liability "in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations,” this language has generally been interpreted not to be a complete waiver of immunity. The waiver has been considered complete for "proprietary” functions. However, the courts have, in varying degrees, given credence and force to the defense of immunity for causes of actions which arose from the performance of "governmental” functions. There can be no question that the issuance of a driver’s license was the performance of a governmental function and, therefore, that the case does not fall within the category where the State has clearly waived its immunity. Thus, the facts must be carefully scrutinized to ascertain whether they come within or without the perimeters established by law for the State’s defense of immunity.
The courts have been reluctant to interfere with the administrative operation of government because they believe it is best to maintain "the administration of municipal affairs in the hands of State or municipal executive officers as against the incursion of courts and juries”. (Weiss v Fote, 7 NY2d 579, 585.) However, the immunity is not unqualified and liability has been found on occasion for acts performed within the *404 sphere of governmental function. The courts have found liability when they were presented with facts which demonstrated that something more than mere error or negligence transpired; or, when the State has manifested an intent to protect a certain class of people.
In the following cases, the courts found that the defense of immunity existed. The Attorney-General was found to possess full judicial immunity for the results of his decisions. (Instalment Dept. v State of New York, 21 AD2d 211.) A building inspector and his municipal employee were given a high degree of protection in Rottkamp v Young (21 AD2d 373, affd 15 NY2d 831). The State Rent Commission was held to be immune from liability for failing to process an eviction proceeding. (Bernkrant v State of New York, 26 AD2d 964.)
However, liability was held to exist in McCrink v City of New York (296 NY 99), wherein the city was found liable for the death of an individual killed by a drunk off-duty police officer, who the city knew was an alcoholic. A city regulation required all off-duty policemen to carry their revolvers. Liability was also found in Schuster v City of New York (5 NY2d 75), when the police did not provide protection for an informer who had assisted them in locating a known criminal. The informer’s name was made public, the police did not provide protection, and the informer was killed. In several other cases where it was determined that liability did not exist under the facts presented because of the defense of immunity, the courts indicated that complete immunity for quasi-judicial decisions did not exist. (Weiss v Fote, 7 NY2d 579, supra; Granger v State of New York, 14 AD2d 645; Lazor v State of New York, 72 Misc 2d 938.)
The most relevant decision to the instant case is the Weiss decision wherein the court decided that the City of Buffalo was not liable for an automobile accident which, according to the claimant, had been caused by an unsafe clearance interval between traffic light changes. The interval had been established for all Buffalo traffic lights after due deliberation by the Board of Safety of the city. The court held that: "absent some indication that due care was not exercised in the preparation of the design or that no reasonable official could have adopted it — and there is no indication of either here — we perceive no basis for preferring the jury verdict, as to reasonableness of the 'clearance interval’, to that of the legally authorized body which made the determination in the first instance.” (Weiss v *405 Fote, 7 NY2d 579, 586, supra.) The above language does not speak of complete immunity for those involved in the decision making process but rather requires that there exist something in the factual situation beyond mere negligence or error. (See, also, 55 NY Jur, State of New York, § 203.)
In my opinion, the facts in the case at bar go beyond negligence or error in the decision making process. If the case merely involved the ordinary decision by the commissioner, or one of his agents or employees, to grant or revoke a license, I would dismiss the suit for "No government could function thus hedged in by lawsuits.” (Newiadony v State of New York, 276 App Div 59, 61.) Much more exists herein.
The DWI Counter-Attack Program for Onondaga County was established under sections 520 through 523 of the Vehicle and Traffic Lav/. Subdivision 1 of section 521 provided for the establishment of "Driver rehabilitation programs” and subdivision 2 of section 521 provided for the establishment of "Driver improvement clinic programs”. As Mr. Baumanis’s license had been suspended by the Town Justice of the Town of Cicero, his contact with the counter-attack program could only progress under subdivision 1 of section 521 of the Vehicle and Traffic Law. Section 521 (subd 1, pars [b], [d]) provided for the return of revoked or suspended licenses; or, permitted the retention of licenses against which there was a tentative order of suspension or revocation. Paragraph (c) of subdivision 1 stated that: "No person shall be permitted to participate officially in any such program unless such person has been referred for participation by the driver rehabilitation advisory board, provided further, however, that the commissioner, in his discretion, may reject any person referred for any such program.”
Under section 522 of the Vehicle and Traffic Law the Commissioner of the Motor Vehicle Department was required to establish a driver rehabilitation board which was charged with the responsibility of developing criteria for the selection of persons to be referred for párticipation in the driver rehabilitation program. (§ 522, subd 2, par [c]) and the selection of those persons to be referred (§ 522, subd 2, par [d].)
This is the statutory authority for the establishment of the driver rehabilitation program. A strong question exists as to whether or not the DWI Counter-Attack Program followed its statutory mandate. The court was unable to find, nor was it directed to any, regulations issued by the commissioner estab *406 lishing the rehabilitation program. Subdivision 1 of section 521 provided that "The commissioner may establish, by regulation”, such program. (Emphasis added.) Thus, a rehabilitation program could only have been legally constituted by regulation. The regulations provided in 15 NYCRR Parts 132 and 133 only apply to driver improvement clinics as established by subdivision 2 of section 521 of the Vehicle and Traffic Law and obviously have no relationship to the regulations required under subdivision 1 of section 521 of the Vehicle and Traffic Law. Reference was made on page 8 of the defendant’s answering memorandum to "the regulations of the Commissioner in respect to Alcohol Drivers Improvement Clinics”; but such regulations were never placed before this court and could not be found in the Official Compilation of Codes, Rules and Regulations of the State of New York. (See section 8 of article IV of the New York State Constitution which requires that in order for a rule or regulation of any State department to be effective, except for those which relate to internal management or organization, it must be filed in the office of the State Department and published.)
Was Mr. Baumanis referred to the program by the Driver Rehabilitation Advisory Board after he was screened according to the appropriate criteria as required by section 521 (subd 1, par [c])? Did a Driver Rehabilitation Advisory Board actually exist for this program? Neither the existence of an advisory board nor the fact that such a board screened Uldis Baumanis was ever presented to this court. These questions raise issues which transcend mere negligence or error by an official in a quasi-judicial capacity. If, after trial, they are answered in the negative, support may be found for claimants’ actions against the State.
In addition, it is possible that the claims herein do not involve the question of a quasi-judicial decision but rather fall in line with those decisions which hold that, when the State undertakes a plan of activity to help protect individuals using the highways, it is obligated to' operate the program in a safe and responsible manner. (See Schuster v City of New York, 5 NY2d 75; Matter of M/T Alva Cape v City of New York, 405 F2d 962.) Considering the nature of the risk — the relicensing of an individual whose license has just been, or is about to be, suspended or revoked — it does not seem unreasonable to expect the program to be operated in a safe and rational manner. (McCrink v City of New York, 296 NY 99, supra.)
*407 In its motion, the defendant also contended that the issuance of the temporary driver’s license could not have been a proximate cause of the accident. Certainly, it was not the sole proximate cause of the accident but, in my opinion, it does have a sufficient nexus in time and act to be a proximate cause. (Dunham v Village of Canisteo, 303 NY 498; Restatement, Torts 2d, §§431, 432, 433.) Obviously, Mr. Baumanis could have been driving his car on that day without a license. However, the courts have often said that "It was reasonable to expect that the owner would comply with the provisions of the Vehicle and Traffic Law” (Granger v State of New York, 14 AD2d 645, 646, supra); and, it is just as possible that Mr. Baumanis would not have operated his vehicle on the fateful day if he had not had the temporary license. As stated in Matter of Guardian Cas. Co. (Kuttler) (253 App Div 360, 362, affd 278 NY 674): "Where the acts of the defendant gave rise to the stream of events that culminated in the accident, such acts are held the proximate cause.” Clearly, the defendant owed a duty to the claimants and all other users of the highway; and, just as clearly the State failed to meet its responsibilities in this area. As the Legislature said, "The public interest in the cause of highway safety will be well served by a careful and thorough study of additional methods of driver rehabilitation”. (Vehicle and Traffic Law, § 520, emphasis added.) If the restraints and checks established by the Legislature in the Vehicle and Traffic Law had been followed, and based on the record provided this court they were not, this tragic accident might not have taken place.
The purpose of the program was laudatory but certainly the Legislature did not envision that its safeguards would not be established by the Department of Motor Vehicles; or, that it was establishing an unprotected revolving door program for the reissuance of a license. I find a cause of action to be stated in these pleadings under both of the theories discussed herein. Of course, the fact that I find a cause of action exists at this point is not binding on the trial court. As was stated in Kelly v Bank of Buffalo (32 AD2d 875, supra): "Factual issues were presented by the affidavits and other evidence submitted by the parties on the. motion which precluded a determination before trial”.
In its motion, the defendant also contended that the court lacked jurisdiction of the subject matter of the suit. For the same reasons that I found the causes of action to exist, I find *408 that this court has jurisdiction over the subject matter of this claim.
Having decided against defendant’s motion to dismiss, I now turn to the claimants’ motion. First, I grant said motion with respect to claimants’ request to amend the claim of John Van Duyn Southworth to reflect the correct date of the accident as August 31, 1973. With respect to that part of the motion which requests an examination before trial of Joseph E. Cassant, an employee of the State of New York, it is denied insofar as a specific employee is named for the examination. The State is ordered to provide an individual with knowledge of the operation of the program and approval of Uldis Baumanis for participation in the program.
Finally, the claimants have requested discovery and inspection of numerous records and papers of the State of New York and its agencies. This part of the motion is granted in part. I direct that all records pertaining to Uldis Baumanis in the possession of the Department of Motor Vehicles and all records in the possession of the Department of Motor Vehicles pertaining to any and all investigations conducted in regard to Uldis Baumanis’s qualifications for the DWI Counter-Attack Program be produced for utilization on the examination before trial.
All such disclosure granted under the accompanying order shall be completed by September 1,1975.
A short form order will be filed contemporaneously herewith.