TITLE GUARANTEE AND TRUST COMPANY and Another, Plaintiffs,
*v.* CORINNE HOFHEIMER and Others, as Executors, etc., of LESTER
HOFHEIMER, Deceased, Defendants.

Supreme Court, Trial Term, New York County, March 29, 1939.

*John F. Caskey* [*John A. Weeks* of counsel], for the plaintiffs.

*Proskauer, Rose & Paskus* [*Eugene Eisenmann* and *William A. Palme* of counsel], for the defendants.

BERNSTEIN, J.   The plaintiffs have brought this action to recover $22,500 on an obligation claimed to have been created under two written contracts between them and the defendants' testator. The defense is that the obligation sued on is a guaranty of part of the principal of a consolidated bond and mortgage on real property, that the fair and reasonable market value of the mortgaged property is greatly in excess of the mortgage debt, and, hence, that under section 1083-b of the Civil Practice Act the defendants are entitled to set off such market value against their indebtedness.

The plaintiffs contend that the contract should be construed as creating a primary obligation to purchase a subordinate interest in the mortgage rather than a collateral obligation to pay part of the debt secured by the mortgage.  In denying the plaintiffs' motion for a summary judgment the Special Term has heretofore held, however, that the obligation constituted a guaranty to which the provisions of the section are applicable, and the Appellate Division has sustained that view (254 App. Div. 663).  Hence it is the law of the case and must be accepted for the purposes of this trial.

This leaves but one question to be decided, the question of the fair and reasonable market value of the mortgaged property, and if such market value be equal to or in excess of the unpaid principal amount of the mortgage debt guaranteed, the defense would be established.

The mortgaged property consists of a ten-story and sub-basement school building on East Eighty-ninth street, which was built for and has been occupied by Dalton Schools, Inc., a non-profit private school chartered by the Board of Regents of the State. It is located in a high-type residential neighborhood and its physical condition is excellent. The actual cost of the property when built in 1930 was $237,500 for the land and $750,000 for the building, a total of $987,500, and the mortgage which was placed on it by the plaintiffs at the time was $550,000. This mortgage has since then been reduced to $545,000. While the property is tax exempt, it has been assessed by the city in 1938 at $720,000. Both sides agree that the building is an adequate and suitable improvement for the land.

The parties differ but little on the present land value, the plaintiffs placing it at $150,000 and the defendants at $167,700. What they differ on principally is the value of the building, the plaintiffs having appraised it at $300,000 and the defendants at $499,000, but the variance is accounted for by the differing methods of appraisal adopted by them in their endeavor to find a substitute formula of fair and reasonable market value for the predepression formula of a willing seller and a willing purchaser, neither of whom was under compulsion to sell or buy.

The plaintiffs point out that the building is what is known as a specialty building, for which there is peculiarly no demand, and that its only value is to be found in its convertibility into an apartment house suited to the neighborhood. They contend, therefore, that its value should be based principally on the cost of such conversion. The defendants counter with the argument that since the building is an adequate improvement for the land it should be valued principally on the basis of cost of reproduction less depreciation.

It is true that the old standard for determining market value has become useless in the depressed condition of the real estate market, and that new standards must be adopted if the rights of both mortgagors and mortgagees are to be protected. But these standards must have some relationship to the peculiar conditions of the properties involved, their particular locations, the uses to which they are put and the necessities for such uses. All of the elements which may be fairly considered as affecting the market value in a given neighborhood should be taken into account, and

such value should be determined in the light of all relevant facts and existing circumstances. (*Heiman* v. *Bishop*, 272 N. Y. 83, and *Matter of Board of Water Supply*, 277 id. 452.)

School buildings of the type of this one are built for a special purpose and fill a continuing need in a large city. They are of value and in demand, regardless of general real estate conditions. They have no market value in the same sense as apartment houses or stores or factories, and are undoubtedly not so readily salable. That was just as true in predepression days as it is today. But they have a market value as schools and for school purposes at all times, and the measure of that value is what other school authorities would pay for them if there were any at hand. (Nicholson on Eminent Domain [2d ed.], p. 678.)

No case has been called to my attention in which the market value of a specialty building adapted for an adequate and suitable use has been measured by the cost of converting it into a building for a different use, or in which conversion cost is an element of market value. On the other hand, reproduction cost less deduction for wear and tear has been frequently applied as a basis of market value of a building adapted for a special use. (*People ex rel. N. Y. Stock Exchange Bldg. Co.* v. *Cantor*, 221 App. Div. 193; affd., 248 N. Y. 533; *People ex rel. Union Club* v. *O'Donnell*, 126 App. Div. 916; *Matter of Jay Street*, N. Y. L. J. May 20, 1935, p. 2606.)

While this formula for determining market value, that is, land value plus structural value, where the improvement is suitable, has been frequently used in taxation and condemnation cases, there is even better reason for using it in a case brought under a statute designed for the specific protection of mortgagors and guarantors in the emergency created by the depression.

Both sides concede that the value should be taken as of the date of trial, and there is some authority for that view. (*Brenek* v. *Bednar*, 243 App. Div. 622; *Bergman* v. *Santa Maria Co.*, N. Y. L. J. June 28, 1935, p. 3335.) With that concession, I find the present fair and reasonable value of the mortgaged property to be at least $650,000, or in excess of the unpaid principal amount of the mortgage debt guaranteed in part by the defendants' testator. In arriving at that figure, I have taken into consideration not only the cost of reproduction of the structure less depreciation, but also the evidence of the most recent land sales in the vicinity, the original cost of the property, the assessed value, the age, location, accessibility and condition of repair of the building, and its suitability for use as a school.

The defense of the statute having been established, the complaint is dismissed. Submit findings of fact and conclusions of law.