Frank P. DeLuca, J.
In this action for a declaratory judgment, plaintiff moves for summary judgment invalidating certain legislation enacted by defendant Town of Huntington and known as the Oil Spillage Ordinance. (Ch. 60, § 60-30 et seq., enacted July 6,1971 and amd. Nov. 23,1971 and Feb. 15,1972.)
Plaintiff owns and operates a marine oil terminal at Cold Spring Harbor in the Town of Huntington. Defendants are the Town of Huntington and the State of New York, the latter having intervened in the action on the basis of public interest in preserving the quality of waterways and the attendant environment.
The subject ordinance requires anyone engaged in the unloading of fuel oil and petroleum products in excess of 600 gallons from a vessel to shore within the Town of Huntington to obtain a permit from an Oil Spillage Control Board established by the ordinance, and pay a fee therefor. In addition, anyone transferring oil to an on-shore distribution depot is required to pay one mill for every five gallons of oil transferred, into a special fund maintained by the Control Board to be used to clean town waters and uplands damaged by oil spills. The fund is not to exceed $100,000 in size.
Plaintiff has launched a broad attack on the constitutionality of the ordinance, in an extensive complaint containing 10 causes of action. It recently was unsuccessful in obtaining a preliminary injunction except to stay a previously pending criminal prosecution in the District Court of Suffolk County. In denying the motion, Mr. Justice McInerney .stated: “ There does not appear that factual certainty necessary for the granting of the preliminary injunction sought by the plaintiff.”
*532 Plaintiff contends that the subject legislation places an unconstitutional burden on interstate and foreign commerce, exceeds the police powers of both the State and the town, denies plaintiff the equal protection .of the laws and that it is an improper means of raising revenue. Plaintiff also argues in this motion, but has not alleged in the complaint, that the ordinance infringes upon the maritime jurisdiction of the Federal Government. This court disagrees and believes that sufficient issues of fact exist warranting denial of the motion and requiring a full-fledged trial.
Both the New York State Constitution and ¡statutory law afford ample police power to a municipality desiring to protect the health, safety and general welfare of the community (N. Y. Const., art. IX, § 2, subd. [c], par. [10]; Town Law, § 130, subd. 15; Municipal Home Buie Law, § 10). That the town has a legitimate interest in protecting the public waters within its boundaries and to enhance the local environment against the danger of .oil spillage appears to be consistent with local police power as provided by .statute and State Constitution. Becently the Court of Appeals sustained an ordinance of the City of New York regulating apartment house incinerators so as to control air pollution and termed the control of environmental pollution exceptionally important and ‘ ‘ exceeded in gravity by only one or two other domestic or even international issues.” (Oriental Blvd. Co. v. Heller, 27 N Y 2d 212, 219.)
Moreover, the State of New York does not claim preemption by reason of the State Water Pollution Control Act (Public Health Law, § 1200 et seq.) or the Environmental Conservation Law. In fact, the State specifically recognizes the power of the Town of Huntington in attempting to protect the health of its citizens from the hazards of oil spills.
Insofar as the argument of an unconstitutional burden on interstate and foreign commerce is concerned, the courts have consistently upheld State and local legislation in the absence of a firm showing that Congress intended to preempt the field and create an exclusive system of regulation. (Swift & Co. v. Wickham, 230 F. Supp. 398, cert. den. 385 U. S. 1036 [upholding State regulation of fowl despite Federal inspection laws]; Chrysler Corp. v. Tofany, 419 F. 2d 499 [State regulation of automobile headlights]; Huron Portland Cement Co. v. City of Detroit, 362 U. S. 440 [city smoke abatement ordinance applicable to vessels engaged in interstate commerce]; New York Cent. R. R. Co. v. Lefkowitz, 23 N Y 2d 1 [State full crew laws] ; Cooley v. Board of Wardens of Port of Philadelphia, 53 U. S. *533 299 [local pilotage laws applicable to Federally licensed vessels] ; South Carolina State Highway Dept. v. Barnwell Bros., 303 U. S. 177 [State regulation of weight and width of vehicles upheld despite disparity of State laws affecting interstate trucking]; Florida Lime & Avocado Growers v. Paul, 373 U. S. 132 [upholding strict State consumer laws despite Federal regulations].)
It is clear that in our Federal ¡system, States and municipal controls will be upheld notwithstanding their undeniable impact on interstate and foreign trade, so long as these laws are not unduly burdensome and are reasonable in scope. The Huntington ordinance requires only that persons unloading fuel or oil from vessels obtain a permit, give advance notice of unloading and pay into a special fund to provide for cleaning costs resulting from oil spillage. No vessels are excluded from the harbors and ports of the town nor is there any interference with the right of free passage so long as the vessels comply with minimum safety standards designed to protect the local citizenry against destruction of their chief natural resource.
The plaintiff also alleges denial of equal protection of the laws under the Fourteenth Amendment of the United States Constitution in that it claims the Long Island Lighting Company is exempt from contributing to the oil spillage fund. However the town denies this claimed exemption and states that xjlco has complied with the ordinance and paid into the fund. Even assuming such exemption, a rational basis for distinction appears in the ordinance, since lilco does not retransfer the fuel oil for truck shipment to other depots but utilizes the fuel at the original unloading site. Hence, the movement and distribution of the oil is somewhat minimized and poses less of a danger than the multi-transfer operation used by plaintiff and other fuel distributors.
Just recently, the Supreme Court of the United States upheld a similar scheme of public charges imposed by a municipality upon passengers emplaning at the local public airport. (Evansville-Vanderburgh Airport Auth. Dist. v. Delta Airlines, 405 U. S. 707.) These “ departure charges ” are similar to the fee' imposed in the case at bar, since it meets the test of a “ charge designed only to make the user of state-provided facilities pay a reasonable charge to help defray the costs of construction and maintenance.” While the town did not construct or erect the facility in question — Cold Spring Harbor — nevertheless it may impose a legitimate charge to help pay for oil spillages which *534 only the plaintiff and a like class would be most likely to cause in the first instance.
Although the complaint fails to allege unlawful infringement upon Federal admiralty and maritime jurisdiction, plaintiff in its brief argues Federal preemption because of the Federal Water Pollution Control Act (IT. S. Code, tit. 33, § 1151 et seq.). While conceding that the Federal statute permits local action in preventing water pollution, plaintiff contends that the Town of Huntington is in fact exercising admiralty and maritime jurisdiction and is therefore violating the maritime clause of the United States Constitution. (Art. Ill, § 2.) It is argued that a Federal three-Judge court recently struck down a Florida statute similar to the subject ordinance, on the grounds that the State law was in conflict with the Federal Water Quality Improvement Act of 1970 (U. S. Code, tit. 33, § 1161 et seq.-, American Waterways Operators v. Askew, 335 F. Supp. 1241 [D. C., Fla., 1971]). Plaintiff states that since the Federal legislation is based upon fault and negligence and has monetary liability limits, a local statute that utilizes a “ no-fault ” concept imposing absolute liability on the fuel oil handler would be tantamount to encroaching upon the exclusive realm of Federal maritime jurisdiction. This court does not agree, especially since the Federal statute contains a specific disclaimer against Federal preemption and practically invites local participation. As noted in the Huron Cement case (supra, p. 442): “In the exercise, of that [police] power, the states and their instrumentalities may act, in many areas of interstate commerce and maritime activities, concurrently with the federal government.”
The court notes that the thrust of the Huntington ordinance is prevention of oil spills through the use of a permit system and advance notification. The ordinance does not make oil spillage punishable per se, either by civil or criminal fines, but instead adopts a special fund scheme aimed, not at maritime shipping, but directed to the “ user ” of the harbor facility, i.e., the fuel oil unloader and handler. Thus, it cannot be said, as a matter of law, that the local ordinance is an unconstitutional infringement upon the exclusive maritime and admiralty jurisdiction of the Federal Government. This was the view of another Federal court in upholding the New York State water pollution control statute as against the claim of interference with Federal maritime and admiralty jurisdiction. (New York State Waterways Assn. v. Diamond-F. Supp.- [W. D. N. Y., Jan. 12, 1972].) The New York statute regulated the discharge of *535 sewage from vessels and requires rather elaborate marine toilets or holding tanks, yet the court held that these burdensome regulations did not involve ‘ ‘ the admiralty or maritime jurisdiction.”
Numerous other factual issues have been raised concerning whether or not interstate commerce is involved herein, since the interstate pipeline terminates at Staten Island after being pumped from the oil fields in Texas. Accordingly, for this and the reasons herein set forth, the motion for summary judgment must be denied.