Leon D. Lazer, J.
In 1971, the Town of Huntington (the "town”) enacted a local law (Code of Town of Huntington, ch 60, § 60-30 et seq.) entitled the Oil Spillage Ordinance. An action to declare the law invalid was thereafter commenced by the Mobil Oil Corporation ("Mobil”) which operates a waterfront oil distribution terminal in the town and the State then entered the litigation by intervening as a party defendant. Mobil first sought preliminary injunctive relief, but when that was withheld it moved for summary judgment. Although Mobil’s arguments relative to the claimed invalidity of the spillage law were rejected, the motion actually was denied on the ground that a fact issue existed (see Mobil Oil Corp. v Town of Huntington, 72 Misc 2d 530). The fact issue has evaporated as a consequence of subsequent decisional law and the defendants now have moved for summary judgment or, in the alternative, for dismissal of each of the 10 causes of action contained in Mobil’s complaint.
Huntington’s oil spillage law prohibits the transfer of liquid fuel or oil in excess of 600 gallons for the purpose of storage or use without a permit issued by the oil spillage control board, an agency created by the same law. Grant of a transfer permit (for which the annual fee is $100) is predicated upon the installation of specified safety equipment. In addition, under pain of possible sanction, the owners or operators of vessels or onshore and offshore facilities are required to notify the oil spillage control board of any spills which take place.
The critical section of the spillage law provides for the creation of a $100,000 fund to be used to prevent spills and to clean up those which do occur. The fund is financed by imposition of a fee of one mill for every five gallons of fuel, transferred by the operators of the three waterfront terminals in the town. Upon the accumulation of $100,000, collection of further fees is suspended until expenditures have reduced the *802 fund to $80,000. The onus of spill removal is assumed by the town which has resort to the fund for defrayal of costs, but the spillage law contains no provision either for ascertaining the cause of spills or requiring the polluter to remove the spill or make restitution for the cost thereof.
In its complaint Mobil avers that the spillage law is void and unconstitutional because it (1) imposes an undue burden upon interstate commerce, (2) purports to regulate the transfer of fuel or oil from vessels upon navigable waters and is therefore beyond the town’s statutory authority to enact, (3) is vague and indefinite, (4) violates the equal protection clause of the Constitution, (5) is an impost or duty on imports and exports, (6) is an illegally excessive exercise of the police power, (7) is an improper revenue-raising measure, (8) is inconsistent with the Federal Water Quality Improvement Act (US Code, tit 33, § 1151 et seq.) which is predicated on a concept of fault and (9) was not adopted in accordance with statutory procedural requirements. A tenth cause of action relating to conflict with the Economic Stabilization Act of 1970 and Executive Order No. 11615 has not been urged on this motion and must be deemed moot in light of the suspension of wage and price controls. In its brief Mobil further asserts that the spillage law infringes upon the maritime jurisdiction of the Federal Government.
Although the denial of summary relief to either party on Mobil’s earlier motion was predicated upon the existence of a fact issue as to whether Mobil’s operation was within the purview of interstate commerce, that question has been resolved in the defendants’ favor by the holding in Portland Pipe Line Corp. v Environmental Improvement Comm., (307 A2d 1 [Me], app dsmd for lack of substantial Federal question, 414 US 1035) that the regulation of coastal operations involving transfer of oil does not conflict with the commerce clause of the Constitution. Whether the rationale of the previous rejection of Mobil’s attack on the validity of the spillage law now entitles the defendants to summary judgment on the theory of law of the case is a threshold question.
Issue finding and not issue determination is the key to summary judgment procedure (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395), and it is generally held that a denial of a motion for summary judgment is not necessarily law of the case (Pugliese v Pugliese, 220 NYS2d 67; Snelwar v Snelwar, 27 Misc 2d 933; Neivel Realty Corp. v Prudence *803 Bonds Corp., 151 Misc 737). Moreover, denial of a plaintiffs motion for summary judgment is not necessarily res judicata on defendants’ subsequent motion to dismiss for failure to state a cause of action (Frederick v Douglas Mobile Corp., 22 AD2d 972). Even the existence of a fact issue is not law of the case to the trial court (Sackman-Gilliland Corp. v Senator Holding Corp., 43 AD2d 948). A respected commentator has stated that denial of summary judgment establishes nothing except that the relief was not warranted (see Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 3212:21, p 440). Telaro v Telaro (25 NY2d 433), which might appear to state a contrary proposition, is clearly distinguishable because in that case the prior determination deemed law of the case derived from an affirmed denial of summary judgment which resolved a specific law issue (see Title Guar. and Trust Co. v Hofheimer, 170 Misc 691, affd 261 App Div 946, rearg den 261 App Div 1074). Sound judicial policy militates against application of the law of the case doctrine to co-ordinate law determinations which flow explicitly or implicitly from denial of summary judgment motions. Should a contrary view prevail, the need to preserve issues for trial might compel immediate resort to appellate review by the unsuccessful movant and, sometimes, even his successful adversary.
Nevertheless, denial of its previous motion now precludes Mobil from obtaining summary judgment on the same facts either by a second motion or reliance on CPLR 3212 (subd [b]), since the grant of such relief would have the effect of frustrating the earlier disposition. In addition, a summary judgment granted by a Judge other than the one to whom the first motion was made would probably violate CPLR 2221 (Siegel, Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 3212:21, p 41). Current summary judgment is available solely to the defendants but only if they can establish the present rectitude of their position.
The arguments that the spillage law imposes an undue burden upon interstate commerce, that it is inconsistent with the Federal Water Quality Improvement Act (US Code, tit 33, § 1151 et seq.) and that it impermissibly infringes upon Federal admiralty jurisdiction have been effectively refuted by the holdings in Askew v American Waterways Operators, (411 US 325) and Portland Pipe Line Corp. v Environmental Improvement Comm. (supra). In Askew, the issue was the validity of *804 the Florida Oil Spill Prevention and Pollution Control Act providing for State recovery of cleanup costs, on a strict liability basis, from the operators of waterfront facilities and from ships destined for and leaving such facilities. The Supreme Court held that the statute neither invaded a regulatory area pre-empted by Federal statute nor intruded upon admiralty jurisdiction and that it was within the police power of the State to impose liability without fault. Portland Pipe Line involved Maine’s Coastal Protection Fund which also is financed by imposition of transfer charges upon oil terminals but, in addition, the Maine statute required that, where fault can be ascertained, the polluter must reimburse the fund for cleanup costs. Inter alia, the Maine court held that the State could hold terminal operators vicariously liable for spills caused by vessels en route to or departing from such terminals and that placing greater liability upon terminal operators was not a denial of equal protection. It also sustained the statute against challenges based upon the commerce clause. The first and eighth causes of action in Mobil’s complaint therefore must be dismissed.
Portland Pipe Line also is dispositive of Mobil’s claim that the spillage law constitutes a prohibited impost on imports and exports. The Maine court held that the license fee in the State statute was not a tax on the imports themselves but on activity relative to their importation and that the overall effect of the act was the establishment of a regulatory scheme for controlling oil pollution. Since, with respect to transfer charges, the Maine statute scarcely differs from the Huntington local law, the fifth cause of action must fall as well.
The contention that the town lacked statutory authority to enact a law affecting the transfer of oil from vessels upon navigable water to waterfront terminal facilities correctly was earlier rejected on the ground that the New York Constitution (art IX, § 2, subd [c], par [10]), Town Law (§ 130, subd 15) and section 10 of the Municipal Home Rule Law afford ample police power to a municipality desiring to protect the health, safety and general welfare of the community. It also is apparent that the field has not been pre-empted by the State, since the State Water Pollution Control Act provides that none of its provisions shall "be construed as estopping the state, persons or municipalities * * * in the exercise of their rights to supress nuisances or to abate any pollution now or hereafter existing” (ECL 17-1101). As the second cause of action thus *805 must fall, so must the third in which it is asserted that the spillage law is vague and indefinite. Mobil has failed to explain in what respect any of the provisions cited by it are either vague or indefinite and they do not appear to lack clarity.
In its ninth cause of action, Mobil maintains that enactment of the spillage law was not in conformity with the procedural requirements of Municipal Home Rule Law (§ 20, subds 2, 3, 5). On this motion, however, the only support for this position is contained in the complaint which asserts that the law (which is labelled both an "ordinance” and a "local law”) is not styled and titled as required by the statute and that there exists a substantial variation between the law as proposed and as finally adopted. As to style and title, there is not substantial departure from the statutory mandate (see Town of Preble v Song Mountain, 62 Misc 2d 353), and with respect to the purported variation referred to Mobil does not offer a copy of the proposal. The town’s response is that the appended "certificates of the Town Attorney” to the effect that "all proper proceedings have been had or taken for its enactment constitute presumptive evidence of the procedural propriety thereof.”
Where evidence is offered on a motion to dismiss for failure to state a cause of action the test is not whether the pleading states a cause of action but whether a cause of action exists (Southworth v State of New York, 82 Misc 2d 400; see Kelly v Bank of Buffalo, 32 AD2d 875). The certificate of the municipal attorney is presumptive evidence that proper proceedings have been had or taken for the enactment of a local law (Municipal Home Rule Law, § 27, subd 2). In any event, it is incumbent upon one challenging a local law to offer proof of noncompliance (cf. People v Hawk Sales Co., 17 NY2d 504) and in the absence of such a showing, compliance with proper procedures will be assumed (Commission of Public Charities v Wortman, 255 App Div 241, affd 279 NY 711). Therefore, the ninth cause of action will be dismissed.
Of more genuine substance are plaintiff’s contentions that the spillage law constitutes an unlawful revenue producing measure and is in violation of the equal protection clause of the Constitution. The power of taxation is vested exclusively in the State Legislature (United States Steel Corp. v Gerosa, 7 NY2d 454) and municipalities have no inherent power of taxation (County Securities v Seacord, 278 NY 34; Society of *806 Plastics Ind. v City of New York, 68 Misc 2d 366). The power to assess and collect taxes may be delegated to localities (Matter of Roosevelt Raceway v County of Nassau, 18 NY2d 30, mot to amd den 18 NY2d 720, app dsmd 385 US 453), but the delegation must be made in express terms by a proper enabling act (see 16 McQuillin, Municipal Corporations, § 44.05; County Securities v Seacord, supra). The Municipal Home Rule Law (§ 10, subd 1, par a, cls [8], [9]) permits the levy and collection of local taxes which have been authorized by the Legislature (see Opns St Comp 67-884) and in section 10, (subd 1, par [i]) it empowers local governments to adopt laws "not inconsistent with the provisions of the constitution or not inconsistent with any general law relating to its property, affairs or government”. The New York Constitution reserves all taxing powers to the State and provides that the delegation must specify the types of taxes and the method for their review (NY Const, art XVI, § 1). Since the town’s reliance is upon its police powers and the Municipal Home Rule Law and not upon the required express delegation, the survival of the spillage law is dependent upon proof that the transfer charges constitute a regulatory or license fee and not a tax. In this respect, Askew and Portland Pipe Line are of no succor to the town’s position since the enactments there in issue were not municipal in origin.
Whether a particular exaction is a tax or a regulatory or licensing measure under the police power can be determined from looking at the whole scope and tenor of the provision (People ex rel. Einsfeld v Murray, 149 NY 367). Where a license fee is imposed in the exercise of the police power it must be such a fee as will legitimately assist in regulation of the business or occupation, and it should not exceed the necessary or probable expense of issuing the license and of inspecting and regulating the business which it covers (Adlerstein v City of New York, 11 Misc 2d 754, affd 7 AD2d 717, affd 6 NY2d 740; Falcone v Zingerline, 61 Misc 2d 885; Town of North Hempstead v Colonial Sand and Stone Co., 14 Misc 2d 727; Barnes v Gorham, 12 Misc 2d 285; Miller v City of Long Beach, 206 Misc 104; Sperling v Valentine, 176 Misc 826). When the sums collected through a licensing or regulatory measure exceed the cost of administration, then it can be deemed a revenue act regardless of its label (People v Strax, 80 Misc 2d 679) although the rule is applicable only where the creation of revenue is the motive for enacting the provision (People ex rel. Einsfeld v Murray, supra).
*807 Here the spillage law appears to have both regulatory and revenue raising aspects. To the extent that it requires those engaged in transfer operations to obtain permits upon payment of a $100 fee, it is patently a licensing or regulatory measure. However, the apparent purpose of the transfer charges is the accumulation of revenue to be used to remove oil spills in Huntington waters no matter what the source of their creation. The State Legislature may, of course, adopt an enactment labelled a license fee on professions, callings, businesses and vocations for the purpose of raising revenue, but such measures are enacted under the power of taxation and not under the police power (People ex rel. Moskowitz v Jenkins, 202 NY 53; Sweeney v Cannon, 23 AD2d 1). In Portland Pipe Line, the court characterized the transfer charges as part of an insurance scheme to which the State could compel the plaintiffs to contribute under its taxing power. Here the town maintains that the transfer charges for oil spill cleanup purposes can be exacted under its police power. Although it is the taxpayer who has the overall burden of proof in seeking to establish the invalidity of a tax and all doubts are resolved in favor of the validity of the measure (Johnson v City of New York, 274 NY 411), at the trial the town will have the onerous task of going forward with further facts which demonstrate that the fees are regulatory in nature and do not constitute a tax levy. The motion to dismiss is denied as to the sixth and seventh causes of action.
Mobil also argues that it is deprived of equal protection of the law because the town has imposed upon it a vicarious liability for all oil spills since the fund to which it contributes is used to clean up all such spills regardless of fault. Actually, the spillage law does not address itself to the liability question at all, for unlike the Maine statute it does not require polluters to clean up their spills and it contains no provision for recovery of damages from them. Consequently, the strict, absolute or vicarious liability cases cited by the parties are irrelevant. Mobil further maintains that fact issues exist with respect to whether the classification inherent in the spillage law has a rational basis and it urges that there is as much or even greater danger of contamination to the shores of Huntington posed by the numerous barges and tankers bound for or discharging oil at terminals located in other communities along Long Island Sound than from those with which it deals at its terminal. Should the trial court find the existence of a *808 state of facts which would permit the revenue aspects of the law to be sustained as a regulatory measure and not as a taxing measure, it would necessarily be compelled to consider the fact issues relative to the rationality of the basis for the classification. The fourth cause of action therefore survives.
The motion for summary judgment dismissing the complaint is denied but the motion to dismiss specific causes of action is granted to the extent that the first, second, third, fifth, eighth, ninth and tenth causes of action are stricken.