OPINION OF THE COURT
Harry Waitzman, J.
On September 24,1982, an assistant fire inspector of the Town of Clarkstown issued informations against the Board of Managers of two large condominium complexes, located respectively in New City (New City Condominiums), and Valley Cottage (Mountainview Condominiums), charging violations by defendants’ Board of Managers for “failure to obtain annual permits for multiple residences for the years 1980, 1981 and 1982, in violation of Section 47-11 of the Town Code of Clarkstown.”
These six criminal proceedings involve directly and indirectly a substantial number of residents within Clarkstown. The vigorous prosecution of the proceedings by the Town Attorney’s office has been opposed strenuously by counsel for the respective condominium units. By letter application dated February 3, 1983, Tracy & Werner, attorneys for Mountainview East moved to dismiss the informations as a matter of law against the Board of Managers *189 of Mountainview East and Warren Kossin, attorney for the New City Condominiums joined in the motion with a lengthy memorandum of law urging a similar dismissal, and setting forth, inter alia, a constitutional objection to collecting fees from the condominium owners as if these were analogous to multiple residences or rental units, asserting the condominium owners were deprived of the equal protection of the laws.
In opposition, John A. Costa, Town Attorney, opposed dismissal in a brief dated February 4,1983, and there were subsequent reply briefs by letter of Paul V. Nowicki, Esq., Deputy Town Attorney, dated February 10,1983, together with a reply of Warren P. Kossin dated February 16,1983, and a reply of Tracy & Werner dated February 17, 1983.
Before determining even the issues presented, reference is required briefly to the applicable provisions of the Clarkstown Town Code (CTC). Chapter 47-11-A of the CTC requires permits to maintain or store hazardous materials or to conduct processes which produce conditions hazardous to life or property. Inspections are required by section 47-11-B before a permit may be issued. In section 47-11-D, the Town Board established uniform fees for such permits issued after inspection to the “applicant”.
The pertinent town code section, section 47-11-E, made “permits and annual fees” payable during the month of January each year and classified certain uses including “multiple residence: 3-10 units — $25 annual fee, each additional unit $3.”
The twofold question presented is, whether a condominium unit is a multiple residence within the meaning of the statute’s schedule of fees and further, whether the annual fee for the permit and inspection is required to be paid by defendants?
The particular statutory provision, section 47-11-E, is contained in chapter 47 of the CTC entitled “Fire Prevention” which provides a provision setting forth legislative intent (§47-1) and definitions in section 47-13. However, the particular local law does not contain a definition of multiple residences, or, refer at all to condominiums.
*190 The town code in other local laws or statutes contains definitions of multiple residences, e.g., in section 59-9 (housing standards) and also in section 106-3 (zoning). But none of these definitions are relevant for the reason that neither the Clarkstown Town Code, nor the New York Multiple Dwelling Law or Multiple Residence Law contains a definition which expressly refers to a condominium as a “multiple dwelling”, by way of inclusion or exclusion.
In the absence of a statutory definition governing the question at hand, the court is constrained to exercise its judicial function to interpret the statute. This task is performed in the traditional sense of determining the intention of the Legislature so as to give effect to the purpose of the statute.
A view of the applicable statutory provisions discloses that section 47-11-E of the CTC provides for a classification of annual fees as follows:
PERMIT ANNUAL FEES Junkyards $25 Bowling alleys, pin refinishing and alley resurfacing 25 Dry cleaning 25 Explosives 25 Flammable liquid 25 Garages and service stations 25 Hazardous chemicals 25 Liquefied petroleum 25 Lumberyards 25 Oil-burning equipment 10 Storage of readily combustible materials 10 Welding or cutting 10 Multiple residence: 3-10 units 25 Each additional unit 3
Since there is no statutory definition of “multiple residence”, consideration must be given to the plain meaning of the precise words of the statute. If there is no plain meaning to the words then recourse can be had to the *191 structure of the statute in question and any legislative history which may be gleaned from its amendment.
The starting point in our determination of the proper interpretation of the statute is regard for the town code’s statutory scheme dealing with the subject of fire prevention. This begins in chapter 42 of the CTC entitled “Explosives”, continues with chapter 45 entitled “Hazardous Businesses” (nursing homes, convalescent homes, rest homes, sanitoriums and private hospitals) and finally chapter 47 entitled “Fire Prevention”.
Clarkstown’s earliest statute adopted in September, 1949, deals with fire hazards; in section 45-1 certain businesses are deemed extrahazardous (nursing homes, convalescent homes, rest homes, sanitoriums and hospitals) and subject to the regulations. This early statute provided the penalty for any offense of a fine not exceeding $250 and imprisonment for a term of 15 days. Then in 1955, the Town Board adopted regulations governing the use of explosives in chapter 42 of the CTC.
The legislative history of fire prevention statutes in Clarkstown continued with adoption in 1964 of chapter 47 entitled “Fire Prevention” whose express legislative intent is set forth hereinafter. We deal here with a criminal statute as section 47-6 prescribes penalties for offenses including fines not to exceed $250 or imprisonment for a term not exceeding 15 days for such fine and imprisonment.
The statute’s purpose set forth in section 47-1 reads “It is the intent of this local law to prescribe regulations consistent with * * * good practice for the safeguarding * * * of life and property from the hazards of fire and explosion arising from the storage handling and use of hazardous substances, materials and devices from conditions hazardous to life and property.”
Section 47-8 as originally enacted June 22, 1964, requires inspection by the fire inspector and chief of the fire department of all buildings and premises except the interior of dwellings as often as may be necessary for the purpose of ascertaining or causing to be corrected any conditions liable to cause fire.
*192 Prior to the prosecutions herein, the Town Board, on June 22, 1982, amended this provision making it the duty of the fire inspector to inspect all buildings or premises except single-family and two-family dwellings as often as may be necessary for the purpose of ascertaining and causing to be corrected any condition liable to cause fire.
In section 47-9 the fire inspector may order any dangerous condition or material to be removed or remedied. However, the instant case does not involve such finding of dangerous conditions but rather the violation of section 47-11 in the failure to obtain permit and/or to pay the fees as set forth in the classified section noted above.
In addition to exempting the interiors of single- and two-family dwellings from inspection, it provides further that the permit accompanying fee shall not be required pursuant to this article for senior citizen housing projects (Clarkstown Town Code, § 47-11-F).
The court finds that the task of judicial construction is made difficult by the absence of an appropriate statutory definition in the particular local law or others in the town code. In addition, review of the legislative history of the statute to determine statutory purpose is not particularly helpful to determine the question as to whether condominiums should be deemed included with the meaning of multiple residences in section 17-11-E.
If the permit fee is for inspection safety purposes, then by section 47-8, a fee is requested for inspection of condominium units but the interiors of the dwelling were specifically excluded from fire inspection. If safety is the purpose then exempting senior citizen housing projects from permit and fee requirements also belies a statutory purpose of fire prevention when due consideration is given to the exemption of interiors and the scope of section 45-1 of the CTC, which regulates businesses or uses deemed extrahazardous. Senior citizen housing for the elderly, some infirm or bedridden, would appear to be proper objects of concern for a fire prevention statute either in chapter 45 or chapter 47.
Further, a review of the classifications of uses in the specific language of section 47-11-E starting with “junkyards” and listing the various businesses up to and including “welding and cutting”, discloses, neither rhyme, nor *193 reason, for the allocation of a $25 annual fee for certain hazardous businesses including a multiple residence and $10 fees for other businesses such as dry cleaning, garage and service stations, oil burning equipment, and storage of readily combustible materials.
The blanket exclusion of senior citizen housing for the elderly from the scope of regulation by chapter 47 and section 45-1, “Fire Hazardous Businesses”, confirms that the statute in question is a legislative enactment whose wisdom cannot be questioned by the court but whose purposes are, at best, ambivalent and which provides, under the guise of provisions for uniform fees, an obvious source of revenues by the Town of Clarkstown. The statute in question appears to have both regulatory and revenue-raising aspects.
The court holds that the plain meaning of the statute in question in its regulatory aspect refers to multiple residences in the physical, or structural sense, and is not concerned with the legal form of ownership of the structure which is irrelevant to the purpose of preventing fire hazards. Whether a garage and service station is company owned and operated, or leased is irrelevant to the need for regulation of such structures to prevent fire hazards.
The word “multiple” is defined as (1) consisting of, including or involving more than one; “residence” is defined as (2) a place where one actually lives, a building used as a home. (Websters 3d New Int. Dictionary Unabridged [1964], pp 1485, 1931.) The plain meaning appears to be a multiple residence is a structure or building containing places for more than one home.
Condominium ownership is the legal form of fee ownership of a type of multiple dwelling, without a landlord-tenant relationship. But such definition is of no help to resolve the question of statutory interpretation involved here. Compare “Buildings” as defined in Condominium Act (Real Property Law, art 9-B, § 339-e, subd 1) to the definition of a “Multiple dwelling” in the police power regulation in subdivision 2 of section 239-a of the Real Property Law concerning kerosene heaters.
The legislative purpose stated in section 47-1 of the CTC expresses the intent to safeguard life and property from the *194 hazards of fire and explosion. A review of both the plain language of the statute and its exemptions is not helpful. Further, the legislative history of this and similar statutes shows increasing concern with fire prevention, and increasing regulation of hazardous uses to protect the public while the legislative history also demonstrates expansion of the exemptions to the statute enacted under the police power to enhance public safety.
The court concludes that the practical statutory construction adopted by Clarkstown and prior Board of Managers in prior cases concluded by stipulations of settlement, in November 23,1976, applying the provisions of the statute in question to condominiums and permitting the installment payment of fees demonstrates evidence of an interpretation that is persuasive to the court.
The court is advised and finds in briefs submitted by Clarkstown that prior settlements or plea bargains were entered into concluding proceedings had hereto in 1976, involving Mountainview Condominiums for years 1973, 1974 and 1975, in amounts of $595 per year or a total of $1,785. A stipulation of settlement, or, plea bargain was entered into before the Hon. Robert M. Maidman, Town Justice, providing a waiver of payments for the arrears for the earlier years (1973, 1974 and 1975) on the promise to pay the 1976 permit fee in installments of $50 per month. The earliest cases were dismissed in accordance with this settlement.
Mountainview East and other adjacent condominiums simultaneously entered into plea bargains and similar dismissals covering arrears for the years 1973, 1974, and 1975, in amounts respectively of $721 for each year but on the promise to pay the 1976 fee in installments of $60 per month.
While it is urged that the prior settlements for sections of the condominium complexes not involved in the instant cases are not binding upon the cases before the court because these settlements were entered into because of economic realities, the court finds that the prior settlements are precedent and persuasive at least under the doctrine of stare decisis.
*195 However, while we conclude that a practical interpretation of the statute in similar cases, which is precedent requires a finding that condominium units are multiple residences within the meaning of section 47-11-D of the CTC, this does not conclude the case.
A review of the statute’s language and particularly its classifications and exemptions discloses a statutory purpose regarding multiple residences more consistent with raising revenues than regulating fire hazards.
Whether a particular statute is a tax or regulatory or licensing statute under the police power can be determined from looking at the whole scope and provisions of the enactment. Where a license fee is imposed to assist in the exercise of the police power it must be such a fee as will legitimately assist in the regulation of the business or occupation and it should not exceed the necessary or probable expense of issuing the license and of inspecting and regulating the business which it covers.
Where the sums collected through a licensing or regulatory measure exceed the cost of administration, then it can be deemed a revenue regardless of its label.
As noted hereinabove the particular statute appears to have both regulatory and revenue-raising aspects. As an exercise of police power the imposition of inspection fees is well settled. (7 McQuillin, Municipal Corporations [3d ed], § 24.557, p 538.)
However, if the essential purpose as applied to condominiums is to raise revenues then a different question is presented, since unless the power to tax has been delegated to the Town of Clarkstown by the Town Law, the taxing power is vested in the State Legislature. (16 McQuillin, Municipal Corporations [3d ed], § 44.05, p 12.
Municipal corporations, including the Town of Clarkstown, have no inherent power of taxation except that power which is expressly granted to them by the Constitution of the State of New York or by statute.
The Board of Managers of New City Condominiums asserts the town, for all other purposes, treats the condominiums as individual single-family residences (real property taxation; amenability to regulation for zoning and building *196 code violations) except for the purpose of collecting the inspection fees. This inconsistency or selectivity, it is urged, is a deprivation of the equal protection of the laws to condominium owners.
The court finds that any constitutional objection addressed to improper, inconsistent or arbitrary classification of condominium units is without substance. (Ampco Printing-Advertisers’ Offset Corp. v City of New York, 14 NY2d 11.) The court finds that any apparent arbitrary classification of condominium units with garages and service stations, for example, and therefore subject to the annual fees imposed under the various classifications is beyond the scope of this court to question.
However, the court finds that those aspects of the statute as applied to condominium units which impose a fee but exempt therefrom inspection is solely revenue producing in nature. By specific exclusions, a statute originally exempting inspection of the interior of dwellings, then recently amended to exclude single-family dwellings from inspections and exempting senior citizen housing from one permit requirement is essentially a statute with paramount revenue-raising aspects since the regulatory aspect is diminished by various exemptions or exclusions.
The court, therefore, finds that the statute as applied to condominium units, without serious regulatory purposes, is a tax enactment that is beyond the power of the Town of Clarkstown to enact. The constitutional objection is therefore well taken since the enactment is “ultra vires” as respects the Town Board of the Town of Clarkstown. (Mobil Oil Corp. v Town of Huntington, 85 Misc 2d 800.)
The court, in reaching such conclusion notes that this decision is not based on a finding the particular provision, as applied, violates the due process or equal protection clauses of the Federal and State Constitutions. Rather, the court finds that so far as the equal protection clause is concerned, in the power to tax, there is a broader power of classification than in other exercises of legislative power such as the regulation of business under the police power (Ampco Printing-Advertisers’ Offset v City of New York, supra).
*197 But it was early held by a learned Judge that there is a distinction between taxes and fees. Justice Sam Eager in Matter of Hanson v Griffiths (204 Misc 736, affd 283 App Div 662), held that: “Generally speaking, taxes are burdens of a pecuniary nature imposed generally upon individuals or property for [deferring] the cost of governmental functions, while, on the other hand, charges are sustainable as fees where they are imposed upon a person to defray or help defray the cost of particular services rendered for his account” (p 738).
Whether a particular exaction is a tax or regulatory or licensing measure under the police power can be determined by looking at the whole scope and tenor of the provision. Where a license fee is imposed in the exercise of the police power, it must be such a fee as legitimately assists in the regulation of a business or occupation and should not exceed the probable or necessary cost of issuing a license and of inspecting and regulating the business which it covers. (Mobil Oil Corp. v Town of Huntington, supra.)
The court has arrived at its conclusion the statute as applied is a tax measure based upon due regard for the schedule of fees charged for inspection and permits while noting each condominium owner of a single-family unit and the interiors is exempt from inspection. A charge for an inspection as a precondition to the issuance of a permit where inspection is not permitted can only be sustained as a revenue-producing measure, or an attempt to exercise the power to tax rather than as one sustainable upon the exercise of police power.
If it is argued that safety requires the inspection only of the common areas of the condominium complex excluding the interiors of the dwellings, then such large fee to inspect the common areas is disproportionate for such limited inspection. The imposition of such fees simply for the inspection of the common areas of condominiums leads one to conclude that such fees are not imposed to defray the costs of the limited services rendered for the inspections of the type required.
The particular statute as applied to condominiums therefore can only be sustained by an express grant of the *198 power to tax by the State Legislature provided in the Town Law or other statutes such as home rule statutes or enabling statutes. Compare the special enabling act of 1963 which permitted New York City to tax commercial rents upheld in the Ampco case (supra).
In the absence of such expressed grant of power to tax to the municipality, the court is constrained to find that the measure as applied to condominiums is without validity. (County Securities v Seacord, 128 NY 34; Brown v Board of Educ., 110 Misc 2d 164, mod 88 AD2d 184.)
In conclusion, while it is clear the taxpayer has the overall burden of proof, in seeking to establish the invalidity of a tax measure and all doubts are resolved in favor of validity of the measure, where the statute on its face requires an inspection fee to be charged under circumstances where by express limitation no inspection, or, only limited inspection is permissible, the town by this decision will be spared the onerous task of going forward with further facts which demonstrate that the fees are regulatory in nature, do not constitute a tax levy and are only enacted to help defray the cost of inspection. (Hanson v Griffiths, supra; Mobil Oil Corp. v Town of Huntington, supra.)
In reaching this conclusion the court is mindful of the limits of judicial power and restricts its decision solely to a determination that the particular local law as applied is more an exercise of the taxing power than the regulatory power without an express grant of power from the Legislature.
The Town Board’s recourse may be special legislation or the revision of the statute in the light of this decision. Inspection fees may properly be charged for inspections of buildings in proper legislation under the police power, subject to constitutional guarantees against unreasonable or unlawful search and provided fees for permits are not clearly disproportionate to the costs of issuance, inspection and regulating the activity.
Nothing in this decision should be deemed to limit the duty of the fire inspector or other public official to act responsibly in dealing with fire hazards or violations of *199 substantive provisions of the building code or zoning ordinance. Counting condominium units to determine the amount of fees required to be paid annually for inspections that are impermissible is, however, not an exercise of the police power to insure public safety. (Cf. Orange & Rockland Utilities v Town of Clarkstown, 80 AD2d 846.)